Theo **BERRY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Through the DEPARTMENT OF AGRICULTURE Through its agency the FEDERAL CROP INSURANCE CORPORATION, Defendant-Appellee.**

No. 84–4491.

United States Court of Appeals,
Fifth Circuit.

July 29, 1985.

Rehearing Denied Aug. 29, 1985.

Johnson & Johnson, Neal G. Johnson, Monroe, La., for plaintiff-appellant.

Joseph S. Cage, U.S. Atty., D.H. Perkins, Jr., Shreveport, La., for defendant-appellee.

Before REAVLEY, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Theo Berry appeals from the judgment of the district court in Berry's suit against the Federal Crop Insurance Corporation (FCIC) in which Berry seeks indemnity, under an all risk crop insurance policy issued by the FCIC, for a claimed loss of production of his rice crop caused by adverse weather conditions. The district court determined that Berry had failed to prove that the policy covered Berry's loss of production. Finding no error, the judgment of the district court is affirmed.

## I. BACKGROUND

For the crop year 1982, Theo Berry planted approximately 350 acres of rice in Ouachita Parish, Louisiana. Berry insured his rice crop by purchasing a crop insurance policy from the FCIC. For harvested acreage, the policy guaranteed a minimum production of 3,485 pounds per acre and a minimum price of eleven cents per pound. A penalty of 500 pounds per acre was assessed against all unharvested acreage.[1] Berry received confirmation of his policy from the FCIC, Plaintiff's Exhibit 7, and the parties do not contest that Berry met the requirements for issuance of the policy.

The testimony at trial established that rice fields must be drained prior to harvest. It then takes from a week to ten days for the ground to dry to the point that it will support the weight of the harvesting machines. Record Vol. II at 55. Berry began draining his fields in preparation for the harvest on September 8, 1982. On September 12, 1982, a tropical storm blew through the area causing wind damage to a portion of Berry's crop. In addition, heavy precipitation fell on Berry's fields during the tropical storm. Consequently, Berry was not able to actually begin harvesting until September 30, 1982. Berry hired a combining crew from Florida to combine his rice, and the Florida crew provided their own equipment. Record Vol. II at 61.

Throughout the month of October, Berry experienced further difficulties harvesting his crop. The ground remained saturated and the harvesting machines frequently bogged down. Each time that happened, Berry had to hire a neighboring crew to free the machines, at a cost per time of $50.00. Somewhere between 9.16 and 11.52 inches of rain fell in the area during the month of October, although the average October precipitation for the area was approximately 2.3 inches.[2] Consequently, rather than improving, harvesting conditions during October actually worsened. Nevertheless, Berry continued to harvest accessible portions of his crop through October 28, 1982. On October 28, 1982, Berry's harvesting crew pulled out because, according to Berry's testimony, it was no longer practical to continue because of the condition of the fields.[3]

1. Paragraph 4(b) of the policy provides: "The production guarantee per acre shall be reduced by the lesser of 5 cwt. or 20 percent for any unharvested acreage." Plaintiff's Exhibit 1 at 1. In this instance, the penalty assessed against unharvested acreage is 500 pounds.

2. The parties stipulated into the record weather summaries from the National Climatic Data Center (NCDC) for the Monroe, Louisiana, area as well as weather summaries from the Northern Louisiana University Climatic Research Center (NLU). The NCDC summary for Octo-

ber indicates that 9.16 inches of precipitation fell in the Monroe area. The NLU summary indicates that 11.52 inches of precipitation fell in the Monroe area during October. In addition, the NLU summary states that the station's normal precipitation for October was 2.37 inches. The NCDC summary does not state a monthly average for October. See Plaintiff's Exhibit 6 at 15; Plaintiff's Exhibit 5 at 2.

3. Berry testified:

For the first fifteen days in November, according to a weather summary for the area, only 0.35 inches of rain fell.[4] From the fifteenth of November to the end of the month, however, an additional 7.17 inches of rain fell.[5] Berry's fields became submerged on November 18, 1982, and the crop was actually destroyed, presumably from mold and mildew, some time thereafter. The testimony also established that Berry's neighbor, Miller, harvested rice through the first two weeks in November. There was also testimony that the Miller rice acreage was topographically similar to the Berry rice acreage.[6]

Berry filed a claim under his rice insurance policy to recover for his weather related losses. Berry claimed that he lost approximately 42 acres of rice because of wind damage attributable to the tropical storm. In addition, Berry claimed the differential between the actual harvest on his approximately 135 harvested acres and the minimum production guaranteed under the policy for harvested acres. Finally, Berry claimed the guaranteed minimum production for unharvested acres for approximately 173 acres of unharvested rice.

An adjuster for the FCIC visited the Berry rice acreage on December 7, 1982. At that time, large portions of the farm were submerged and accessible only by tractor. After surveying the damage, the adjuster approved the claim for 42 acres of wind damage. In addition, the adjuster allowed the deficiency claim on the 135 acres that Berry actually harvested. The adjuster denied Berry's claim on the 173 acres that were not harvested because he concluded that the loss did not occur until after the expiration of Berry's policy on October 31, 1982. The adjuster testified: "I determined that [the claim on the 173 acres] was an uninsurable cause because it happened after the end of the insurance period for the rice policy." Record Vol. II at 20.

Berry sued to recover under the policy for the losses he incurred on his unharvested acreage pursuant to 7 U.S.C. § 1506(d) which authorizes suit against the FCIC in federal district court. As noted, the district court determined that Berry failed to prove that his losses are covered by the policy. The district court entered judgment against Berry, and Berry appeals. This Court affirms.

## II. DISCUSSION

### A. *The Federal Crop Insurance Corporation*

The FCIC was created in 1938 by the Federal Crop Insurance Act, 7 U.S.C. § 1501–20. The FCIC was created for the purpose of promoting the national welfare "by improving the economic stability of agriculture through a sound system of crop insurance...." 7 U.S.C. § 1502. The Government engaged in this program of crop insurance in part because "[p]rivate insurance companies apparently deemed

---

Q: All right. Now, what was the last day you harvested rice out there, if you can tell from these tickets [rice receipts]?
A: The 28th day of October.
Q: Why did you stop then?
A: Because I could not stand up. It wasn't only tearing up combines and hiring them folks, it cost me fifty dollars every time they came over to pull out a combine.

Record Vol. II at 64.

**4.** Only the NCDC weather summary was introduced for November. That summary shows 0.35 inches of precipitation from November 1, 1982, to November 15, 1982. Plaintiff's Exhibit 6 at 16. This report was introduced as part of Plaintiff's Exhibit 6 at trial. Berry's motion to supplement the Record on Appeal to include this exhibit was granted June 14, 1985.

**5.** *Id.*

**6.** The Government did not introduce any evidence or testimony in its case in chief. Cross-examination testimony elicited by the Government established that harvesting actually took place the first two weeks in November on the Miller rice acreage. Testimony conflicted over whether the Miller acreage was topographically similar to the Berry acreage. While Berry testified that the Miller acreage had "more ridges," Record Vol. II at 73, other witnesses testified that the topography was similar, *e.g.,* Record Vol. II at 34. Any conclusion by the district court that the acreage was similar is amply supported by the record.

all-risk crop insurance too great a commercial hazard." *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 383 n. 1, 68 S.Ct. 1, 3 n. 1, 92 L.Ed. 10 (1947) (and legislative history cited therein).

The Federal Crop Insurance Program has been expanded numerous times over the years. The most recent expansion is embodied in the Federal Crop Insurance Act of 1980. The 1980 amendments to the Act expanded the number of crops covered by the insurance program as well as the geographic regions where insurance would be available. In addition, the amendments sought to encourage increased participation by farmers in the program by offering to subsidize farmers' premiums.[7] Finally, the amendments sought to encourage private insurance companies to participate in selling federal crop insurance. *See* H.R.Rep. No. 96–430, 96th Cong., 1st Sess. 8–15, *reprinted in,* 1980 U.S.Code Cong. & Ad. News 3068, 3070–78; H.R.Conf.Rep. No. 96–1272, 96th Cong., 2d Sess., *reprinted in,* 1980 U.S.Code Cong. & Ad.News 3082.

Section 1516 of the Act authorizes the Secretary of Agriculture and the FCIC to issue such regulations as may be necessary to carry out the provisions of the chapter. These regulations are binding on the insureds, *Merrill,* 332 U.S. at 384–85, 68 S.Ct. at 3, and the regulations set forth the terms of the crop insurance contracts. See 7 C.F.R. 401.101 *et seq.* It is under this framework that this Court is called upon to interpret the coverage and termination provisions of Berry's rice insurance contract.

### B. *The Contract*

Two provisions of Berry's contract are at issue in this appeal. The first provision states the basic coverage under the policy:

1. CAUSES OF LOSS. (a) Causes of loss insured against. The insurance provided is against unavoidable loss of production·resulting from adverse weather conditions (excluding drought), insects, plant disease, wildlife, earthquake or fire occurring within the insurance period,

subject to any exceptions, exclusions or limitations with respect to causes of loss shown on the actuarial table.

(b) Causes of loss not insured against. The contract shall not cover any loss of production, as determined by the Corporation, due to (1) application of saline water, (2) the neglect or malfeasance of the insured, any member of the insured's household, the insured's tenants or employees, (3) failure to follow recognized good farming practices, (4) damage resulting from the backing up of water by any governmental or public utilities dam or reservoir project, or (5) any cause not specified as an insured cause in this policy as limited by the actuarial table.

Plaintiff's Exhibit 1 at 1.

The second provision of the policy that bears on this appeal is the termination clause of the policy which provides:

6. INSURANCE PERIOD. Insurance on insured acreage shall attach at the time the rice is seeded and shall cease upon the earliest of (a) final adjustment of a loss, (b) combining, threshing, or removal of the rice from the field, (c) October 31 of the calendar year in which rice is normally harvested, or (d) total destruction of the insured rice crop.

Plaintiff's Exhibit 1 at 2. It is the position of the Government in this appeal that Berry's policy terminated October 31, 1982, and that Berry's loss occurred after termination of the policy.

### C. *Discussion*

Berry makes two arguments to this Court in order to establish that his losses are covered by the policy. First, Berry argues that he suffered an "unavoidable loss of production" on October 28, 1982, when his harvesting crew pulled out and Berry ceased harvesting. It is undisputed that Berry did not actually harvest any more rice after October 28, 1982. What is disputed is whether Berry could have or should have harvested beyond the October

---

7. For example, Berry received a premium adjustment of $666.14 so that his net premium for

coverage of his rice crop was $2,454.20. Plaintiff's Exhibit 18.

28th date and into the first two weeks of November.

As a second argument, Berry asserts that even if this Court concludes that he did not suffer an "unavoidable loss of production" until his fields became submerged in November, the cause of the November flooding was the rain that fell during the policy period. Berry argues that because the cause occurred during the policy period, he has demonstrated an "unavoidable loss of production from adverse weather conditions ... occurring during the insurance period...." The heart of Berry's argument is that the policy insures against certain causes of loss and only the cause must occur during the policy period.

In its opinion, the district court made the following findings:

> After a trial to the court, we find that Berry has failed to carry his burden of proving that the loss he incurred as a result of the damage to the 173.3 acres of rice was covered by the insurance policy. The FCIC performed a field inspection after Berry filed his claim under the policy, and determined that *the latter portion of Berry's acreage was damaged after October 31, 1982. We find no credible evidence offered by Berry which convinces us that the rain damage to the disputed area occurred earlier.* Berry therefore was not entitled to indemnification for the loss he suffered due to rain damage on that portion of his farm.

Record Vol. I at 50–51 (emphasis added). The district court entered judgment consistent with its conclusions and dismissed Berry's suit. Record Vol. I at 53.

This Court reviews the factual determinations of the district court under the clearly erroneous standard. Fed.R.Civ.P. 52(a). This Court will not reverse the district court's findings unless this Court is left with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Berry's initial contention is that his loss of production occurred before October 31, 1982. It is undisputed that Berry last harvested rice on October 28, 1982. Nevertheless, Berry's neighbor, Miller, harvested rice until November 16, 1982. As noted, Miller's rice acreage is located adjacent to Berry's rice acreage. The FCIC adjuster testified that Miller's land was subject to the same weather conditions as Berry's acreage, and that Miller's acreage was similar topographically to Berry's. Berry, however, testified that Miller's land "had more ridges." Given this conflicting evidence, this Court holds that the district court did not clearly err in finding that Berry's loss of production occurred after the expiration of the policy.

Berry's second contention is that he demonstrated that the *cause* of his loss occurred before the expiration of the policy, and the contract requires only that the cause occurs during the policy period. Berry argues that the point in time that he actually lost production is irrelevant. Accepting for the sake of argument only that Berry need only show that the cause of his loss occurred before October 31, 1982, this Court holds that the district court's conclusion that Berry did not make this showing is not clearly erroneous.

Berry claims that the September and October rains caused his loss of production. Nevertheless, the weather summaries demonstrate that there was approximately 0.35 inches of rain in the early weeks of November. During the second half of November, however, substantial amounts of rain fell. Accepting, as we have, that the district court could have reasonably concluded that Berry could have harvested until the middle of November, the district court did not clearly err in concluding that Berry failed to prove that the September and October rains caused his loss of production. The record amply supports the conclusion that the cause of Berry's loss of production was the late November rains.

As this Court has often stated, "an appellate court is not free to reweigh the evidence, or to re-evaluate credibility of

witnesses or to substitute for the district court's reasonable factual inferences from the evidence other inferences that the reviewing court may regard as more reasonable." *Glass v. Petro-Tex Chemical Corp.,* 757 F.2d 1554, 1559 (5th Cir.1985). Of specific importance in this case is the district court's statement that it found no *credible* evidence to support the plaintiff's position in this case. "A reviewing court should respect credibility choices made by the fact finder," *Cranberg v. Consumers Union of U.S., Inc.,* 756 F.2d 382, 388 (5th Cir.1985), and such choices will not be overturned unless this Court is left with the definite and firm conviction that a mistake has been committed. This Court is not left with that conviction in this case.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.