Eugene **ROYALTY**, Plaintiff,

v.

**FEDERAL CROP INSURANCE CORPORATION**, Defendant.

Paul **JENKINS**, Plaintiff,

v.

**INTERNATIONAL BUSINESS & MERCANTILE REASSURANCE COMPANY**, Defendant.

**Nos. C 84–0280–L(B), C 84–0151–L(B).**

United States District Court, W.D. Kentucky, Louisville Division.

Aug. 6, 1985.

W. Earl Dean, Harrodsburg, Ky., for plaintiff.

Richard Dennis, Asst. U.S. Atty., Louisville, Ky., for defendant in No. C 84–0280–L(B).

Robert Spragens, Lebanon, Ky., for defendant in No. C 84–0151–L(B).

## MEMORANDUM

BALLANTINE, District Judge.

These consolidated actions seek recovery under two policies of crop insurance. The case was tried to the Court on August 1 and August 2, 1985, and the following constitutes the Court's findings of fact and conclusions of law. F.R.Civ.P. 52.

Jurisdiction in action C 84–0151–L(B) is founded on diversity, Title 28 U.S.C. Section 1332(a)(1), and jurisdiction in action C 84–0280–L(B) is founded on Title 7 U.S.C. Section 1508(c).

Plaintiff Royalty owned a 235-acre farm in Washington County, Kentucky. In late 1982 he was approached by plaintiff Jenkins who wanted to lease 11 acres, more or

less, on which to raise a tobacco crop. Royalty and Jenkins reached an agreement by which they would share equally in the cost of preparing the tobacco bed and in the proceeds of the sale. They intended to raise about 22,000 pounds of tobacco on Royalty's farm.

In addition to the crop he planned to raise on Royalty's farm, Jenkins had committed himself to raising an additional 60,000-plus pounds of tobacco on other farms in Washington and Nelson Counties. This was twice as much tobacco as Jenkins had ever raised before and twice as much as he raised in 1984.

Royalty was the owner of an insurance agency and he procured crop insurance for Jenkins through defendant, International Business & Mercantile Reassurance Company (IBMR). For reasons not entirely clear to the Court, Royalty procured insurance on his interest in the crop with defendant, Federal Crop Insurance Corporation (FCIC).

In April, 1983, Buford Sea, at the request of Jenkins, began to plough the ground on the Royalty farm. At the time the agreement was made between Jenkins and Royalty, the land in question had not been farmed in several years. It was planted in fescue, red clover, orchard grass, and perhaps some alfalfa. Before Sea could complete the ploughing a rainy spell set in and the ploughing could not be completed until June 25 or 26.

July 1 was the deadline before which the tobacco had to be planted, failing which the insurance was ineffective. On June 29 and 30, Jenkins, with the help of his daughter, his son-in-law, and his brother-in-law, set the tobacco in the hurriedly prepared field. Although plaintiffs' witnesses testified that the tobacco plants were set two inches deep by a tobacco setter, the evidence, supported by photographs, demonstrates that this simply isn't so.

In any event, it is undisputed—and the Court has an independent recollection—that a drought set in after the rainy spell and that the months of June, July and August, 1983, were disastrous to farmers in Kentucky and elsewhere.

On July 20, 1983, after receiving a notice of a possible loss claim from the plaintiffs, an adjuster for FCIC visited the Royalty farm. He made a preliminary inspection and he returned to the Royalty farm either July 26 or July 28. On that occasion he found an excessive amount of sod and rock present in the ploughed field. The adjuster found that the ground was hard and that 93.2% of the tobacco plants were either dead or missing. He further found that the plants had been set to a depth of 1 inch. He further testified that about ¾ of an acre in the field had not been worked at all.

Foster Hogan, a crop claims supervisor for IBMR, received notice of the possible claim and on July 21 he sent two adjusters to examine the Royalty farm. After considering the report of his adjusters, Hogan himself went to the Royalty farm on July 28. He found a large percentage of dead tobacco plants with their roots exposed. Relying on his experience, Hogan concluded that the field was not in the proper condition for planting because of inadequate ploughing and excessive rock in the field. He did find that some plants had survived on about two acres which had previously been used for a tobacco crop.

It was developed at trial that on or about July 4, 1983, there was a .3-inch rain but that this was the only rain which fell during the summer months.

It was established at trial that tobacco, when it is set at first, will thrive, but after about 24 hours it wilts. Tobacco then regains its vitality and should, from that point on, continue to grow. There was a suggestion that the .3-inch rain may have plastered the leaves of tobacco to the ground if the rain fell during the time the tobacco was in a wilted state. The Court is not persuaded that this suggestion is credible in light of all the other evidence.

Perhaps the most damaging testimony against the plaintiff came from Rick Greenwell, the Washington County Extension Agent employed by the University of Kentucky College of Agriculture.

On July 26 Greenwell went to the Royalty farm. He found that the field had not been ploughed deeply enough and that plants were lying on top of the ground with their roots exposed. He found strips of fescue sod scattered about and considerable rock on the ground. Ninety-seven percent of the plants were dead.

Greenwell was originally concerned that the condition which he saw had been caused by plant disease or by an infestation of insects. He later determined that the preparation of the land was improper. He testified that as of July 26 when he examined the field, the drought had not been sufficiently severe to cause the death of the plants. It was conceded by all parties that tobacco is an unusually hardy plant and that even in the drought conditions of the summer of 1983, a considerable amount of tobacco was produced in Kentucky. Admittedly, it was not as well developed as in other years, but photographic exhibits introduced by plaintiffs show that at least one of Jenkins's crops of tobacco survived the drought.

Bobby Brady, the FCIC adjuster, testified that the ground should have been ploughed in the fall of 1982 and certainly no later than February, 1983. This testimony is disputed by plaintiffs and their witnesses, who contended that had the field been ploughed in the fall of 1982, the erosion damage would have been substantial.

The land in question is a soil type called Eden shale which has a high clay content. By its nature, Eden shale also contains a substantial amount of rock.

Plaintiffs also introduced evidence that they had applied a considerable amount of fertilizer, at least one ton per acre.

The policies of insurance exclude coverage for losses which result from "failure to follow recognized good farming and harvesting practices."

The Court concludes that plaintiffs have failed to sustain their burden of proof. The overwhelming evidence in this case establishes that plaintiff Jenkins overextended himself in an attempt to raise between 80,000 and 90,000 pounds of tobacco and that the rainy spring simply did not allow him enough time properly to plant the tobacco on the Royalty farm. That his other crops flourished as well as could be expected in the drought conditions is evidence that he is a competent farmer but that his efforts simply strained his capabilities to the breaking point and that the reason his crop failed on the Royalty farm was because he had insufficient time to prepare the land and to plant the crop properly.

The Court concludes that the exclusion quoted relieves defendants of any liability to plaintiffs and a judgment will be entered in favor of defendants on the claims of the plaintiffs against them.