**R & R FARM ENTERPRISES, INC.,**
**Plaintiff-Appellee,**

v.

**FEDERAL CROP INSURANCE CORPO-**
**RATION, DEPARTMENT OF AGRI-**
**CULTURE, Defendant-Appellant.**

No. 85–4248.

United States Court of Appeals,
Fifth Circuit.

May 9, 1986.

Joseph S. Cage, Jr., U.S. Atty., D.H. Perkins, Jr, Asst. U.S. Atty., Shreveport, La., Russell Caplan, Appellate Staff, Civ. Div., Dept. of Justice, Aaron B. Kahn, Raymond W. Fullerton, Attys., U.S. Dept. of Agriculture, Office of General Counsel, Washington, D.C., for defendant-appellant.

Jones, Jones & Alexander, J.B. Jones, Jr., Jennifer J. Bercier, Cameron, La., for plaintiff-appellee.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

R & R Farm Enterprises, Inc., (R & R) seeks to recover the proceeds of two rice crop insurance policies. The district court found in its favor and entered judgment against the Federal Crop Insurance Corporation (FCIC) for $214,928.82 plus interest from the date of judicial demand. Finding that the district court erred both in its allocation of the burden of proof and in charging the FCIC with interest, we VACATE and REMAND.

## I.

R & R, a Louisiana corporation organized by Ralph Braswell and Raymond Natali, planted rice on three farms for which it obtained 1982 rice crop insurance policies from the FCIC. The policies insured against acts of God and nature but expressly disclaimed any liability for losses attributable to man.[1]

1. The rice crop insurance policies provided for causes of loss as follows:

(a) **Causes of loss insured against.** The insurance provided is against unavoidable loss of production resulting from adverse weather conditions (excluding drought), insects, plant disease, wildlife, earthquake or fire occurring within the insurance period, subject to any exceptions, exclusions or limitations with respect to causes of loss shown on the actuarial table.

(b) **Causes of loss not insured against.** The contract shall not cover any loss of production, as determined by the Corporation, due to (a) application of saline water, (2) the neglect or malfeasance of the insured, any member of the insured's household, the insured's tenants or employees, (3) failure to follow recognized good farming practices, (4) damage resulting from the backing up of water by any governmental or public utilities dam or reservoir project, or (5) any cause not specified as an insured cause in this policy as limited by the actuarial table.

*See* 7 C.F.R. § 424.7(d)(1)(a)(a)(b) (1983).

In June of 1982, R & R advised the FCIC that it expected a partial crop failure. The harvest was completed in October and R & R filed claims totaling nearly $400,000 for 3,053,165 pounds of crop lost from its farms. The FCIC determined, after several inspections, that R & R's total insurable loss was $64,826.08 and sent R & R a check for this amount. The inspector reported to the FCIC's District Director that R & R's remaining losses were the result of several "poor farming practices." R & R filed suit pursuant to 7 U.S.C. § 1508(c) asserting that the FCIC had improperly refused to pay the full amount of its claim.

The district court placed on the FCIC the burden of proving that R & R's losses resulted from poor farming practices, relying on *Calcasieu-Marine Nat. Bank of Lake Charles v. American Employers' Ins. Co.,* 533 F.2d 290, 295 (5th Cir.), *cert. denied,* 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976), and *Standard Life Ins. Co. of Indiana v. Hughes,* 240 F.2d 859, 861–62 (5th Cir.1957), both diversity cases applying Louisiana law. After a two-day bench trial, the court found that the FCIC failed to show that poor farming practices were the cause of R & R's losses, primarily because it failed to send an adjuster to inspect R & R's premises promptly. The court held, in the alternative, that even if the FCIC could have shown that poor farming practices caused R & R's losses, the FCIC would still have been liable for R & R's entire claim because the FCIC failed to present evidence at trial which would support its calculation of R & R's insured losses.

After calculating R & R's damages, the district court awarded both prejudgment and postjudgment interest, finding that the FCIC was not clothed with the government's sovereign immunity from interest on unpaid claims because its transactions were akin to those of a private enterprise. In this court, the FCIC challenges both the allocation of the burden of proof and re-

sulting judgment in favor of R & R and the award of interest from the date of judicial demand.

## II.

The FCIC, a wholly government-owned entity, was created by the Federal Crop Insurance Act of 1938. 7 U.S.C. § 1503. *See Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 381, 68 S.Ct. 1, 2, 92 L.Ed. 10, 13 (1947). Its founding was intended "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance." 7 U.S.C. § 1502. The government pioneered this program, in part because "[p]rivate insurance companies apparently deemed all-risk crop insurance too great a commercial hazard." *Merrill,* 332 U.S. at 383 n. 1, 68 S.Ct. at 3 n. 1, 92 L.Ed. at 14 n. 1.

■ Congress conferred on the FCIC all powers customary to corporations in general, including the ability to enter into and carry out contracts or agreements. The statute further provides that:

> State and local laws or rules shall not apply to contracts or agreements of the Corporation or the parties thereto to the extent that such contracts or agreements provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts or agreements.

7 U.S.C. § 1506(k). R & R's 1982 rice crop insurance contract makes no provision for state or local law. Accordingly, to the extent that such laws are inconsistent with R & R's 1982 contract, they are not applicable.

The Secretary of Agriculture and the FCIC are authorized to and have issued regulations necessary to carry out the provisions of the Federal Crop Insurance Act. 7 U.S.C. § 1516(b); 7 C.F.R. §§ 424.1–.7 & App. B (1983).[2] These regulations set forth the terms and conditions of rice crop insur-

**2.** The rice crop insurance regulations were amended, in part, in 1982, 1983, and 1984. Because we are concerned only with those regulations which were in effect during the contract

period, April 27, 1982 through October 31, 1982, all citation will be to the 1983 regulations, which contain the March 18, 1982 amendments. *See* 47 Fed.Reg. 11,644 (1982).

ance contracts, *see* 7 C.F.R. § 424.7 (1983), which bind the insureds. *See Merrill,* 332 U.S. at 384–85, 68 S.Ct. at 3, 92 L.Ed. at 15–16; *Berry v. Fed. Crop Ins. Corp.,* 766 F.2d 886, 889 (5th Cir.1985).

■ The 1982 rice crop insurance policies make the following provision for claims for indemnity:

> (a) *It shall be a condition precedent to the payment of any indemnity that the insured* (1) *establish* the total production of rice on the unit and *that any loss of production was directly caused by one or more of the insured causes* during the insurance period for the crop year for which the indemnity is claimed and (2) furnish any other information regarding the manner and extent of loss as may be required by the Corporation.

7 C.F.R. § 424.7(d)(8)(a) (1983) (emphasis added). This provision placed on R & R the burden of establishing that its losses were directly caused by one or more of the perils insured against. *See Royalty v. Fed. Crop Ins. Corp.,* 618 F.Supp. 650, 652 (W.D.Ky. 1985). *Cf. Berry,* 766 F.2d at 890 (burden of proof is on the plaintiff to show that loss of production occurred during the policy period); *Felder v. Fed. Crop Ins. Corp.,* 146 F.2d 638, 639–40 (4th Cir.1944) (burden of proof is on the plaintiff to show timely filing of proof of loss claim). R & R's assertions to the contrary are meritless. Because Louisiana law is inconsistent with the contract's unequivocal allocation of the burden of proof, the district court erred in applying it.

R & R argues that the district court properly turned to well-recognized principles of insurance law in interpreting the policy. Where the contract is not ambiguous, however, the court is bound by the contract terms as written. *See, e.g., Ideal Mut. Ins. Co. v. Last Days Evangelical*

*Ass'n, Inc.,* 783 F.2d 1234, 1238 (5th Cir. 1986) (applying Texas law); *Foreman v. Continental Cas. Co.,* 770 F.2d 487, 489 (5th Cir.1985) (applying Mississippi law); *Hanover Bldg. Materials, Inc. v. Guiffrida* 748 F.2d 1011, 1013 (5th Cir.1984) (when federal law governs the construction of insurance contracts, disputes are resolved by drawing upon standard insurance law principles); *Smith v. Mobil Corp.,* 719 F.2d 1313, 1317 (5th Cir.1983) (applying Louisiana law). R & R also asserts that the district court's alternate holding entitles it to full indemnification regardless of who bore the burden of proof. Under the proper burden of proof, however, R & R must show, by a preponderance of the evidence, that all loss of production was directly caused by one or more of the insured causes. If R & R cannot show that all of its losses resulted from an insured cause, it would still be incumbent upon R & R to show that, for that portion of its loss for which it seeks indemnification, the loss was directly caused by one or more of the perils insured against.

■ R & R finally contends that the district court's improper allocation of the burden of proof was harmless in view of the court's finding that none of R & R's losses was attributable to uninsured perils. While improper allocation of the burden of proof might, in some instances, be considered harmless,[3] such is not the case here. We have no quarrel with the findings of fact by the district court. However, it is necessary to vacate those findings and remand for the court's application of the proper burden of proof.[4] If the court deems it appropriate, further hearings and findings of fact may be made.

### III.

Concerning the district court's award to R & R of pre- and postjudgment interest, it

---

**3.** *See, e.g., Fed. Deposit Ins. Corp. v. Castle,* 781 F.2d 1101, 1108 n. 4 (5th Cir.1986); *Ray E. Friedman & Co. v. Jenkins,* 738 F.2d 251, 254 (8th Cir.1984); *Sones-Morgan v. Hertz Corp.,* 725 F.2d 1070, 1072 (6th Cir.1984).

**4.** It was not improper for the FCIC to introduce evidence at trial to show that some or all of the

claimed losses were caused by uninsured hazards. *See supra* note 1. For the reasons stated above, however, the FCIC's right to put on proof does not place on it any affirmative burden, which remains with the plaintiff throughout the trial.

is well established that, subject to constitutional limitations, interest on claims against the United States cannot be recovered in the absence of a specific provision to the contrary in a contract or statute or express consent of Congress. *United States v. Louisiana,* 446 U.S. 253, 264–65, 100 S.Ct. 1618, 1626, 64 L.Ed.2d 196, 208 (1980); *United States v. Alcea Band of Tillamooks,* 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738, 739 (1951); *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 658–59, 67 S.Ct. 601, 603–604, 91 L.Ed. 577, 581 (1947).

Nevertheless, when Congress has created agencies of the federal government with the power "to sue and be sued," this authority has almost invariably been construed as a waiver of sovereign immunity for certain purposes. *See Franchise Tax Bd. of Cal. v. U.S. Postal Serv.,* 467 U.S. 512, 516–20, 104 S.Ct. 2549, 2552–55, 81 L.Ed.2d 446, 451–54 (1984) (garnishment); *Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81, 83–86, 61 S.Ct. 485, 486–87, 85 L.Ed. 595, 597–98 (1941) (waiver extends to costs of suit); *Federal Housing Administration v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724, 728–29 (1940) (garnishment); *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381, 388–89, 59 S.Ct. 516, 517–18, 83 L.Ed. 784, 788–89 (1939) (implied waiver of immunity). To state that the "sue and be sued" provision in the Federal Crop Insurance Act, 7 U.S.C. § 1506(d), waives the FCIC's sovereign immunity does not, however, fully resolve the issue before us. It is also necessary to determine the scope of that waiver. As the Supreme Court recently explained, "waiver of sovereign immunity is accomplished not by 'a ritualistic formula'; rather intent to waive immunity and the scope of such a waiver can only be ascertained by reference to underlying congressional policy." *Franchise Tax Bd.,* 467 U.S. at 521, 104 S.Ct. at 2554, 81 L.Ed.2d at 454 (citation omitted). *Franchise Tax Bd.* consequently held the Postal Service amenable to administrative garnishment proceedings by the California taxing authorities based on a

waiver of sovereign immunity. Significantly, as will be shown below, the Court observed that Congress intended to create the Postal Service as a self-sustaining corporation, and that garnishment would not impose liability upon the Service. *Id.* at 520–21 & nn. 13–14, 104 S.Ct. 2554 & nn. 13–14, 81 L.Ed.2d at 453 & nn. 13–14.

Justice Holmes presaged the *Franchise Tax Bd.* analysis as it bears on the specific issue of the government's liability for interest, stating that, "[w]hen the United States went into the insurance business, issued policies in familiar form and provided that in case of disagreement it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business." *Standard Oil Co. of New Jersey v. United States,* 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519, 521 (1925). The Court awarded interest from the date of judicial demand to claimants under two policies of insurance issued by the government protecting the steamship Llama and her freight against war risks. The Court subsequently explained *Standard Oil* as creating liability based upon a direct government incursion into a commercial venture, where the United States did not intend to "bear any part of the cost of the insurance or ... give pecuniary aid to the owners of ... property insured." *United States v. Worley,* 281 U.S. 339, 342, 50 S.Ct. 291, 293, 74 L.Ed. 887, 890 (1930). The government profited from the war risk insurance at issue in *Standard Oil. Id.* at 343, 50 S.Ct. at 293, 74 L.Ed. at 891. Thus, an award of interest was permitted where the government undertook a commercial enterprise and, because it made a profit, where such an award would not impose liability on the United States Treasury.

By contrast, the Court in *Worley* refused to award interest to beneficiaries of a life insurance policy purchased by a U.S. serviceman through a government-funded program during World War I. Critical to the distinction from *Standard Oil* were the facts that the United States bore the expenses of the administration and excess mortality and disability costs arising from

the servicemen's insurance program, and that its premiums were not adequate to cover its costs. *Id.* at 343, 50 S.Ct. at 293, 74 L.Ed. at 891.

From these decisions it appears that where an agency of the United States has embarked upon an essentially commercial venture which aspires to profitability, its waiver of sovereign immunity may encompass liability for pre- or postjudgment interest. However, where the party who seeks payment from the government is a recipient of its largesse arising out of a non-commercial venture, an award of interest constitutes a benefit incremental to that which Congress or its agencies have prescribed. The Court in *Worley* concluded that it should not impose upon the government such liability, which, given the delays of litigation, could be extremely costly, when the effect would be a direct charge on the public treasury. Thus, the waiver of sovereign immunity does not create a new liability upon the government in such a setting beyond the benefits specifically provided by its legislation and regulations. The *Worley* reasoning explains the decision of one of our sister circuits to award pre- and postjudgment interest on claims made under the Urban Property Protection and Reinsurance Act of 1968, *see Bituminous Cas. Corp. v. Lynn,* 503 F.2d 636, 643–46 (6th Cir.1974), while denying an award of postjudgment interest to a claimant for past-due social security benefits. *See Chipman v. Secretary of Health and Human Serv.,* 781 F.2d 545, 548 (6th Cir. 1986).[5]

Applying the dichotomy created by the *Standard Oil* and *Worley* decisions to this case is not difficult. The Federal Crop Insurance Act, as previously stated, represented an experimental, pioneering effort to insure against crop losses in a market where commercial insurers had feared to tread. From its birth until the enactment of substantial congressional funding revisions in 1980, FCIC premiums were designed to cover only the claims made under policies, while the federal government, both through the subscription of capital stock and annual appropriations, funded the program's overhead. Accumulated loss reserves were not always sufficient to cover claims made under the policies. *See* S.Rep. No. 254, 96th Cong., 1st Sess. 10–12 (1979). The desire to expand participation in the program, combined with other policy goals, led Congress in 1980 to commence subsidizing 30 percent of the premiums "charged" to farmers carrying government insurance. *See* 7 U.S.C. § 1508(b)(3). *See also* H.R. Conf.Rep. No. 1272, 96th Cong., 2d Sess. 16, *reprinted in* 1980 U.S.Code Cong. & Ad.News 3082, 3086. Since 1980, administrative and operating costs are paid by annual appropriations, and the government may be required to subscribe to as much as $500,000,000 of the FCIC's capital stock. *See* 7 U.S.C. §§ 1504(a), 1516(a). *See also* S.Rep. No. 254, 96th Cong., 1st Sess. 12–13 (1979). Thus, while fitted with the trappings of a commercial corporation, the FCIC relies only partly on premium revenues to cover its costs, and depends heavily upon capital infusions, borrowing from other branches of government, *see* 7 U.S.C. § 1516(c), (d), and congressional appropriations. We therefore conclude that the FCIC stands closer to the model identified in *Worley* than to that in *Standard Oil.*

---

**5.** However, the circuits are split as to whether and on what legal basis to award interest against the Postal Service in Title VII cases. *Compare Hall v. Bolger,* 768 F.2d 1148, 1151–52 (9th Cir.1985); *Nagy v. United States Postal Serv.,* 773 F.2d 1190, 1192–93 (11th Cir.1985); *and White v. Bloomberg,* 501 F.2d 1379, 1385–86 (4th Cir.1974) (Postal Service liable) *with Loeffler v. Carlin,* 780 F.2d 1365, 1370–71 & n. 3 (8th Cir.1985) *and Cross v. United States Postal Serv.,* 733 F.2d 1327, 1329–30 (8th Cir.), *aff'd en banc by an equally divided court,* 733 F.2d 1332 (1984), *cert. denied,* ―― U.S. ――, 105 S.Ct. 1750, 84 L.Ed.2d 815 (1985) (Postal Service not liable). This court has not yet addressed the issue. *Cf. West v. Harris,* 573 F.2d 873, 882–84 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979) (allowing an award of prejudgment interest against the National Flood Insurers Association on the ground that it is an association of private insurers; the fact that the federal government subsidizes the program does not render it an arm of the sovereign).

Our conclusion is reinforced by Justice Frankfurter's observation in *Merrill* that the government's unique venture into crop insurance "merely underscores the fact that the undertaking by the Government is not an ordinary commercial undertaking, and thereby reenforces the conclusion that the rules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency like the Corporation, unless Congress has so provided." 332 U.S. at 383 n. 1, 68 S.Ct. at 3–4 n. 1, 92 L.Ed. at 14–15 n. 1. *Merrill* held that the FCIC could not be liable for crop insurance contrary to the provisions of its regulations, even though a government employee had led the plaintiffs to believe that their losses would be covered. Finding that the regulations were paramount and binding on the plaintiffs, Justice Frankfurter emphasized "the duty of all courts to observe the conditions defined by Congress for charging the public treasury. The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss...." *Id.* at 385, 68 S.Ct. at 3–4, 92 L.Ed. at 15. In this connection, it is pertinent that the Corporation's regulations specifically exclude liability for interest or damages arising from any policy of insurance. *See* 7 C.F.R.App. § 424.7(5)(e) (1983).

The FCIC, in short, represents one of a panoply of government programs designed to encourage, by subsidy if necessary, the nation's agricultural business. An award of interest is not essential to proper functioning of the FCIC in its commercial capacity and, indeed, at the outer limits, could undermine its ability to provide the needed coverage. Consequently, we decline to conjure up, in the absence of express congressional direction, a requirement that interest be awarded on disputed federal crop insurance claims.

For the foregoing reasons, the judgment of the district court is VACATED and REMANDED for further proceedings consistent herewith.