United States Court of Appeals,

Fifth Circuit.

No. 91-6200.

Coy U. SPAWN, Jr., Plaintiff-Appellee,

v.

WESTERN BANK—WESTHEIMER, Defendant,

Federal Deposit Insurance Corporation, Defendant-Appellant.

May 4, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before KING and EMILIO M. GARZA, Circuit Judges, and HALL,[*] District Judge.

NG, Circuit Judge:

The FDIC, in its corporate capacity as insurer of bank deposits, appeals from the district court's final judgment, which awarded Coy Spawn prejudgment interest and attorney's fees in connection with his claim for deposit insurance. As discussed below, we conclude (a) that the FDIC is immune from awards of prejudgment interest in the context of its decisions regarding deposit insurance, and (b) that the district court abused its discretion in determining that the FDIC's position was not substantially justified for purposes of the Equal Access to Justice Act. We therefore reverse the district court's judgment to the extent it awarded Spawn prejudgment interest and reasonable attorney's fees.

## I. BACKGROUND

On July 7, 1986, Coy Spawn and his sister, Bernadette Spawn, each deposited $100,000 in 91-day certificate of deposit accounts at Western Banks-Westheimer of Houston (Western Bank). The bank records for the first account, certificate of deposit number 55386 (COD 55386), reveal that (1) the DEPOSITOR was "Coy U. Spawn, Jr. or Bernadette A. Spawn," (2) LEGAL TITLE to the account was held by "Coy U. Spawn, Jr. or Bernadette A. Spawn," (3) only Coy Spawn's social security number was provided for TAX ID purposes, (4) both Coy Spawn and his sister Bernadette

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

signed the signature card for the account, (5) the social security numbers of both Coy Spawn and his sister Bernadette appeared on the signature card, and (6) the account was denominated as being JOINT W/RIGHT OF SURVIVORSHIP. The bank records for the second account, certificate of deposit number 55387 (COD 55387), contain substantially similar information, except that (1) the names of Coy and Bernadette were in reverse order in records revealing who was DEPOSITOR and who held LEGAL TITLE to the account, and (2) only Bernadette Spawn's social security number was provided for TAX ID purposes.

Almost three months after the Spawn siblings had deposited their money in COD 55386 and COD 55387, the Texas State Banking Commissioner declared Western Bank insolvent and appointed the FDIC as receiver. The FDIC, in turn, approved the transfer of Western Bank's insured deposits to Charter National Bank-Houst on. Thus, the FDIC, in its corporate capacity as insurer of bank deposits, began reviewing Western Bank's account records to determine the amount of deposits that were federally insured.

After reviewing the bank records of COD 55386 and COD 55387, the FDIC determined that, under its regulations, the certificates of deposit were "jointly owned accounts" of Coy Spawn and his sister Bernadette. *See* 12 C.F.R. § 330.9 (1989) (pre-FIRREA).[1] The FDIC therefore aggregated the two accounts in calculating deposit insurance coverage. Because the funds in the two "jointly owned accounts" exceeded the statutory maximum of $100,000 for deposit insurance coverage, the FDIC determined that COD 55387 (the one listing Bernadette's social security number for TAX ID purposes) was insured up to $100,000, but that COD 55386 (the one listing only Coy's social security number for TAX ID purposes) was uninsured. The FDIC made no inquiry as to whether, despite the information contained in the bank records, the two certificates of deposit accounts were "in fact" separately owned.

On March 30, 1989, Coy Spawn (Spawn) filed a complaint in federal district court against the FDIC in its corporate capacity as insurer of bank deposits. Under the judicial review provisions

---

[1]The parties agree that the pre-FIRREA versions of statutes and FDIC regulations apply to this case.

of the Administrative Procedure Act, Spawn sought a determination that COD 55386 was not an uninsured "jointly owned account," as previously determined by the FDIC, but rather a fully insured account owned solely by him. Spawn further sought prejudgment interest and attorney's fees.

The FDIC filed a motion for summary judgment, alleging that it was entitled to rely solely on bank records for purposes of determining whether COD 55386 was a "jointly owned account" of Spawn and his sister under its regulations. The district court granted the motion. It concluded that the FDIC did not have to go "behind the failed bank's deposit records and ... make a factual determination as to the ownership interest in insured deposit account records." According to the district court, "in making the determination of ownership, the FDIC properly looked at the deposit records and signature cards which show that both Coy and Bernadette Spawn have a right to withdraw both accounts."

On appeal, this court reversed. *See Spawn v. Western Bank-Westheimer,* 925 F.2d 885 (5th Cir.1991) (*Spawn I* ). Based on our review of the FDIC's regulations regarding "jointly owned account" determinations, we concluded that the FDIC had acted "arbitrarily and capriciously" in refusing to look behind the bank records to determine whether COD 55386 was in fact jointly owned by Coy and his sister Bernadette. We stated:

> [T]he FDIC's interpretation of the regulations at issue contradicts the unambiguously expressed directions they contain. We may not defer to that erroneous interpretation, which is not "in accordance with the law." 5 U.S.C. § 706(2)(A). Spawn must be permitted to prove that the certificate of deposit at issue, although styled as a joint tenancy with right of survivorship, was in fact an account separately owned by him and separately insurable by the FDIC. Because the facts necessary to Spawn's position were not proved or conceded, we must remand the case for further proceedings.

925 F.2d at 889.

On remand, the FDIC considered numerous records submitted by Spawn and, based on these records, determined that COD 55386 was "in fact" individually owned by Spawn. The only remaining issues, therefore, were whether Spawn was entitled to prejudgment interest, attorney's fees, and costs. After holding a trial on these issues, the district court concluded that (a) Spawn was entitled to recover prejudgment interest, and (b) because the FDIC's decision to deny insurance coverage was not "substantially justified," Spawn was entitled to recover attorney's fees under the Equal Access to

Justice Act. The FDIC now appeals.[2]

## II. ANALYSIS

### A. The Prejudgment Interest Award

The FDIC first argues that the district court erred in awarding Spawn prejudgment interest. The FDIC specifically contends that, in its corporate capacity as insurer of deposit accounts, it is immune from awards of prejudgment interest for erroneous deposit insurance determinations. For the following reasons, we agree.

1. *The "No-Interest" Rule and Its Exceptions*

In *Library of Congress v. Shaw,* 478 U.S. 310, 311, 106 S.Ct. 2957, 2960, 92 L.Ed.2d 250 (1986), the Supreme Court reaffirmed the viability of the no interest rule, which provides "that interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." The Court explained:

> In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim.

*Id.* at 314, 106 S.Ct. at 2961. In holding that a separate, express waiver of immunity to interest is usually required, however, the Court in *Shaw* also noted that the "no interest rule is ... inapplicable where the Government has cast off the cloak of sovereignty and assumed the status of a private commercial enterprise." *Id.* at 317 n. 5, 106 S.Ct. at 2963 n. 5 (citing *Standard Oil Co. of New Jersey v. United States,* 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519 (1925)).

We have read *Shaw* and subsequent cases to establish a general rule prohibiting an award of interest with at least two exceptions. As we stated in *McGehee v. Panama Canal Commission,* 872 F.2d 1213 (5th Cir.1989):

> We begin with the general proposition that sovereign immunity bars an interest award against the United States. The rule admits of exceptions, two of which are relevant in this case. The

---

[2]Spawn originally filed a cross-appeal, asserting that he was entitled to recover "market rate" attorney's fees—which may be awarded where a federal agency acts in bad faith, vexatiously, wantonly, or for oppressive reasons, *see Baker v. Bowen,* 839 F.2d 1075, 1081 (5th Cir.1988)—as opposed to "cap-rate" attorney's fees. On Spawn's own motion, however, this cross-appeal was dismissed.

United States may be ordered to pay interest [1] when Congress has expressly consented to such an award, ... and [2] when Congress has shed the cloak of sovereignty and given an agency the status of a commercial operation.

*Id.* at 1214-15. "The focus of the first exception," we explained, "is whether the legislation giving rise to the cause of action expressly subjects the government to interest payments." *Id.* at 1215. "The second exception," we continued, "turns on whether Congress, in creating the agency, intended a waiver of immunity from interest awards." *Id.* Thus, in *McGehee* we made it clear that Congress' intent to waive an agency's immunity from interest can be gleaned from either the statute creating the cause of action or the statute creating the agency. The ultimate question with regard to both of the exceptions, however, is whether Congress *intended* to waive the government's immunity from interest awards.

2. *Applying the "No-Interest Rule" and Its Exceptions in the Context of FDIC Deposit Insurance Determinations*

The FDIC argues that neither of the exceptions to the no interest rule applies to its deposit insurance determinations. The FDIC specifically contends that no provision of the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811 et seq., expressly waives its immunity from interest awards. The FDIC further contends that, even though Congress gave the FDIC the power to "sue and be sued," Congress did not intend a broad waiver of the FDIC's immunity from interest. We address each of these contentions in turn.

a. *Express Waiver Exception*

In *Library of Congress v. Shaw,* which dealt specifically with the express waiver exception to the no interest rule, an employee of the Library of Congress filed a suit against the agency under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. 478 U.S. at 312, 106 S.Ct. at 2960. The employee sought to enforce a settlement agreement awarding him a retroactive promotion with back pay. *Id.* The district court held that the settlement was valid under Title VII and accordingly authorized the agency (1) to promote the employee with back pay, and (2) to pay reasonable attorney's fees and costs. *Id.* at 312-13, 106 S.Ct. at 2960. In calculating the attorney's fees, the district court awarded interest "for the delay in receiving payment for the legal services rendered." *Id.* at 313, 106 S.Ct. at 2961. The court of appeals affirmed the interest award, on the

basis of language in Title VII itself. *Id.* at 313-14, 106 S.Ct. at 2961.

The Supreme Court granted certiorari to "decide whether Congress, in enacting Title VII, expressly waived the Government's immunity from interest." *Id.* at 311, 106 S.Ct. at 2960.[3] The Court held that Congress had not. In so holding, the Court rejected the argument that Congress had expressly waived the Government's immunity from interest by making the United States liable "the same as a private person" for "costs," including "a reasonable attorney's fee," *see* 42 U.S.C. § 2000e-5(k) (Section 706(k) of Title VII). *Shaw,* 478 U.S. at 317, 106 S.Ct. at 2963. The Court reasoned that: (a) by making the United States liable "the same as a private person," Congress had only waived the Government's immunity from attorney's fees and not from interest, *see* 478 U.S. at 318-20, 106 S.Ct. at 2963-64; (b) by allowing "reasonable" attorney's fees to be awarded against the United States, Congress did not intend to allow interest on those attorney's fees, *see id.* at 320-21, 106 S.Ct. at 2965; and (c) Congress did not intend prejudgment interest to be included as a component of the United States' liability for "costs," *see id.* at 321, 106 S.Ct. at 2965.

The express waiver standard set forth by the Supreme Court in *Shaw* is difficult to satisfy for plaintiffs seeking recovery of prejudgment interest. The Court in *Shaw* stated that, "[i]n analyzing whether Congress has waived the immunity of the United States, [courts] must construe waivers strictly in favor of the sovereign, ... and not enlarge the waiver beyond what the language requires." 478 U.S. at 318, 106 S.Ct. at 2963 (internal quotations and citations omitted). The Court further explained that "[t]he no-interest rule provides an added gloss of strictness upon these usual rules," and then set forth the following standard for judging whether a statutory provision expressly waives a federal agency's immunity from interest:

> There can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

*Id.* (internal quotations and citations omitted). Finally, the Court in *Shaw* cited examples of what would qualify as an express waiver of immunity from interest. One of the examples cited was 28

---

[3]It was undisputed that, in suits brought against private employers under Title VII, a prevailing employee might recover interest on attorney's fees. *See* 478 U.S. at 313, 106 S.Ct. at 2961.

U.S.C. § 2411, which expressly authorizes awards of prejudgment and postjudgment interest against the United States in tax refund cases. *See Shaw,* 478 U.S. at 318 n. 6, 106 S.Ct. at 2964 n. 6.

Under the strict waiver standard of *Shaw,* the district court correctly concluded that Congress has not expressly waived the FDIC's immunity from interest awards. None of the provisions that Spawn relied on in the district court—including 12 U.S.C. §§ 1819(a)[4] 1821(f),[5] and 1822(b)[6]—expressly waives the FDIC's immunity from interest awards in the context of insurance determinations. Indeed, Spawn does not seriously argue on appeal that Congress expressly waived the FDIC's immunity from interest in the provisions of the Federal Deposit Insurance Act. Accordingly, we hold that Congress has not expressly waived the FDIC's immunity from prejudgment interest awards in the context of deposit insurance determinations.

### b. *Commercial Enterprise Exception*

After determining that Congress had not expressly waived the FDIC's immunity from prejudgment interest awards, the district court proceeded to determine whether Congress had, in creating the FDIC, shed the agency's "cloak of sovereignty" and given it the status of a commercial enterprise. Focusing on language in 12 U.S.C. § 1819(a), which allows the FDIC "to sue and be sued," the district court concluded that Congress intended to waive the FDIC's immunity from interest in the context of erroneous insurance determinations. The district court reasoned: "When Congress establishes an agency and authorizes it to engage in commercial business activities and permits it to sue and be sued, the presumption is that Congress did intend prejudgment interest."

In holding that the FDIC's sue-and-be-sued clause permits recovery of prejudgment interest,

---

[4] 12 U.S.C. § 1819(a) gives the FDIC, as insurer or receiver, the power "[t]o sue and be sued, and complain and defend, in any court of law or equity, State or Federal." Under *Shaw,* this provision would not constitute "express congressional consent to the award of interest *separate from* a general waiver of immunity to suit." 478 U.S. at 314, 106 S.Ct. at 2961.

[5] 12 U.S.C. § 1821(f) prescribes how the FDIC should pay the insured deposits of a bank that has failed. It also provides for judicial review of FDIC insurance determinations. It does not, however, contain any language indicating that prejudgment interest may be awarded against the FDIC.

[6] 12 U.S.C. § 1822 involves the FDIC *as receiver.* Therefore, it could not possibly provide an express basis for awarding prejudgment interest against the FDIC as insurer.

the district court primarily relied on the Supreme Court's decision in *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). The question presented in *Loeffler* was identical to the question addressed by the Court in *Shaw,* except that a different federal agency was involved. Specifically, in *Loeffler* the Court granted certiorari to determine "whether prejudgment interest may be awarded in a suit *against the United States Postal Service* brought under Title VII of the Civil Rights Act of 1964." 486 U.S. at 551, 108 S.Ct. at 1967 (emphasis added). The Court determined that, despite the general no interest rule, such interest could be awarded against the Postal Service.

The Court in *Loeffler* first focused on the significance of a sue-and-be-sued clause in an agency's enabling legislation. It began with the general immunity rule, by noting that, "[a]bsent a waiver of sovereign immunity, the Federal Government is immune from suit." 486 U.S. at 554, 108 S.Ct. at 1969. The Court then observed, however, that "Congress ... has waived the sovereign immunity of certain federal entities from the time of their inception by including in the enabling legislation provisions that they may sue and be sued." *Id.* When Congress allows federal agencies "to sue and be sued," the Court continued, a liberal construction rule should be applied to determine the extent of the waiver. It stated:

> [S]uch waivers ... of governmental immunity ... should be liberally construed.... Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*Id.* (quoting *FHA v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940)). Under this liberal construction rule, the Court recognized "that authorization of suits against federal entities engaged in commercial activities may amount to a waiver of sovereign immunity from awards of interest when such awards are an incident of suit." 486 U.S. at 555, 108 S.Ct. at 1969.

The Court in *Loeffler* then focused on the nature of the Postal Service. It stated: "When Congress created the Postal Service in 1970, it empowered the Service "to sue and be sued in its

official name.' 39 U.S.C. § 401(1). This sue-and-be-sued clause was part of Congress' general design that the Postal Service "be run more like a business than had its predecessor, the Post Office Department.' " 486 U.S. at 556, 108 S.Ct. at 1969 (quoting *Franchise Tax Board of California v. USPS,* 467 U.S. 512, 520, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984)). Focusing on the nature of the Postal Service, the Court in *Loeffler* stated:

> By launching the Postal Service into the commercial world, and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's cloak of sovereignty and given it the status of a private commercial enterprise. It follows that Congress is presumed to have waived any otherwise existing immunity of the Postal Service from interest awards.

486 U.S. at 556, 108 S.Ct. at 1969 (internal quotations and citations omitted). And, because the presumption of waiver was not overcome by any of the exceptions to the liberal construction rule, the Court concluded that, "at the Postal Service's inception, Congress waived its immunity from interest awards, authorizing recovery of interest from the Postal Service to the extent that interest is recoverable against a private party as a normal incident of suit." *Id.* at 557, 108 S.Ct. at 1970.

The Court in *Loeffler* finally turned to the question of whether prejudgment interest would be recoverable against a private party in a suit brought under Title VII. All parties agreed that Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers. *Id.* at 557-58, 108 S.Ct. at 1970-71. Accordingly, the Court held that the Postal Service could be subjected to an interest award in a Title VII case.

In our view, the district court read *Loeffler* too broadly when it concluded that the FDIC is subject to prejudgment interest for erroneous deposit insurance determinations. It placed great, if not dispositive, weight on the fact that Congress has authorized the FDIC to "sue and be sued." It also concluded—without much discussion—that the FDIC is engaged in a "commercial enterprise" in making deposit insurance determinations. Further, the district court did not consider whether allowing prejudgment interest in this case would conflict with the provisions of the Federal Deposit Insurance Act, or whether prejudgment interest would be recoverable against a private party under like circumstances.

This court has twice suggested that the presence or absence of a sue-and-be-sued clause is not dispositive of the question whether a federal agency is subject to a prejudgment interest award.

In *R & R Farm Enterprises v. Federal Crop Ins. Corp.,* 788 F.2d 1148 (5th Cir.1986), a case that was decided before *Loeffler,* we explained:

> To state that the "sue and be sued" provision in the Federal Crop Insurance Act ... waives the FCIC's sovereign immunity does not ... fully resolve the issue [of whether prejudgment interest may be awarded against it for making an erroneous insurance determination]. It is also necessary to determine the scope of that waiver.

*Id.* at 1152. The crucial question with respect to awards of prejudgment interest, we noted, is whether the sue-and-be-sued agency "has embarked upon an essentially commercial venture which aspires to profitability." *Id.* at 1153. More recently, in *McGehee v. Panama Canal Commission,* we again indicated that the presence of a sue-and-be-sued clause may not be talismanic for purposes of determining whether a federal agency is subject to prejudgment interest awards.[7] 872 F.2d at 1218; *see also Sandia Oil Co. v. Beckton,* 889 F.2d 258, 262 (10th Cir.1989) (absence of a general sue-and-be-sued clause not necessarily fatal to claim that agency is subject to prejudgment interest awards under *Loeffler* ); *Far West Federal Bank,* 787 F.Supp. 952, 962 (D.Or.1992) (holding that FDIC's sue-and-be-sued clause did not dispose of question whether FDIC could be held liable for prejudgment interest). We did emphasize in *McGehee,* however, that for the *Loeffler* exception to apply, the federal agency must be operating as "a commercial venture." 872 F.2d at 1218.

The district court concluded that Congress, by authorizing the FDIC to provide "insurance," has launched the FDIC in the commercial world and removed its "cloak of sovereignty." We disagree. The FDIC, when it is acting in its capacity as insurer of deposits, is not like the Postal Service in *Loeffler,*[8] but more like the Federal Crop Insurance Corporation in *R & R Farm*

---

[7]In *McGehee,* the plaintiffs were arguing that the Panama Canal Commission—which Congress has not authorized "to sue and be sued"—was nonetheless subject to prejudgment interest awards for property damage. This court assumed *arguendo* that a sue-and-be-sued clause is not essential, but nonetheless determined that the Panama Canal Commission was not engaged in a commercial venture. *See* 872 F.2d at 1218-19.

[8]The FDIC's role as insurer of deposits is also distinguishable from the government's role in *Standard Oil Co. of New Jersey v. United States,* 267 U.S. 76, 45 S.Ct. 211, 69 L.Ed. 519 (1925), a case in which the Court awarded prejudgment interest to claimants under two policies of insurance issued by the government protecting the steamship Llama and her freight against war risks. *Standard Oil,* we have stated, stands for the proposition that an award of interest will be permitted "where the government under[takes] a commercial [insurance] enterprise and, because [the government] ma[kes] a profit, where such an award would not impose liability on the United States Treasury." *See R & R Farm Enterprises,* 788 F.2d at 1152.

*Enterprises.*

The Federal Deposit Insurance Act, like the Federal Crop Insurance Act, represented a "pioneering effort" to insure against losses in a market "where commercial insurers had feared to tread." *See R & R Farm Enterprises,* 788 F.2d at 1153. As the Supreme Court recently stated:

> Congress' purpose in creating the FDIC was clear. Faced with virtual panic, Congress attempted to safeguard the hard earnings of individuals against the possibility that bank failures would deprive them of their savings.... To prevent bank failure that resulted in the tangible loss of hard assets was therefore the focus of Congress' effort in creating deposit insurance.

*FDIC v. Philadelphia Gear Corp.,* 476 U.S. 426, 432-33, 106 S.Ct. 1931, 1935, 90 L.Ed.2d 428 (1986); *see also United States v. Doherty,* 18 F.Supp. 793, 794 (D.Neb.1937) (noting that the FDIC "is an instrumentality created by the government for the public welfare ..." to provide for the sound, effective, and uninterrupted operation of the banking system and for other purposes), *aff'd,* 94 F.2d 495 (8th Cir.1938), *cert. denied,* 303 U.S. 658, 58 S.Ct. 763, 82 L.Ed. 1117 (1938). More importantly, the FDIC notes, "[t]here is no private, commercial equivalent to the FDIC's role of stabilizing and promoting confidence in the national banking system." In addition, although the FDIC relies on premiums from insured banks to pay the cost of deposit insurance, *see* 12 U.S.C. § 1817, the FDIC also relies on borrowing from the United States Treasury to meet its obligations, *see* 12 U.S.C. § 1824. Thus, we conclude that the FDIC does not constitute a commercial enterprise within the meaning of *Loeffler. See also Sandia Oil Co. v. Beckton,* 889 F.2d at 263 (holding that Federal Emergency Management Agency's flood insurance program is not a commercial venture).

The district court also ignored an important distinction between this case and *Loeffler*—namely, that the plaintiff in *Loeffler* filed suit against the Postal Service under Title VII, a statute that clearly authorizes the award of prejudgment interest against private employers. In this case, by contrast, no underlying statute clearly authorizes an award of prejudgment interest. As discussed above, Spawn brought suit under the judicial review provisions of the Administrative Procedure Act (APA) to challenge the FDIC's insurance determination under the Federal Deposit Insurance Act. Spawn does not even argue that the judicial review provisions of the APA permit

federal courts to award prejudgment interest against agencies for wrongful conduct.[9]  And, as the Tenth Circuit pointed out in rejecting a similar claim for prejudgment interest against the FDIC, the Federal Deposit Insurance Act expressly "permits delays in paying insurance when the FDIC is in doubt about the validity of a claim to insurance proceeds."[10]  *Philadelphia Gear v. Corp. v. Federal Deposit Ins. Corp.,* 751 F.2d 1131, 1138-39 (10th Cir.1984), *rev'd on other grounds,* 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986);  *see also Marchese v. United States,* 781 F.Supp. 241, 246 (S.D.N.Y.1991) (relying on *Philadelphia Gear* to hold that plaintiffs could not recover prejudgment interest for FDIC's wrongful withholding of their certificates of deposit).  The underlying statutes governing Spawn's claim against the FDIC, therefore, unlike Title VII, argue against allowing prejudgment interest awards against the FDIC in cases like this.

In sum, although there is support for the proposition that the FDIC is subject to prejudgment interest awards when it makes an erroneous deposit insurance determination,[11] we conclude that the district court erred in awarding prejudgment interest under the "commercial enterprise" exception to the no interest rule.  The FDIC's sue-and-be-sued clause, although constituting a broad waiver of the agency's immunity from suit, does not dispose of the question whether Spawn may recover interest.  The more important considerations are whether the FDIC as insurer of deposits is engaging in a

---

[9]We note that several courts have held that the APA does not authorize federal courts to award any kind of monetary damages against an agency.  *See Williams v. Casey,* 657 F.Supp. 921, 926 (S.D.N.Y.1987) (holding that monetary damages are not authorized by the APA); *Fidelity Financial Corp. v. Federal Home Loan Bank,* 589 F.Supp. 885, 895 (N.D.Cal.1983) ("[T]he APA does not confer upon federal courts the authority to assess and levy monetary relief ex post to compensate those injured by tortious agency action.").

[10]12 U.S.C. § 1821(f) provides, in pertinent part:

> [T]he Corporation, in its discretion, may require proof of claims to be filed before paying the insured deposits, and ... in any case where the Corporation is not satisfied as to the validity of a claim for an insured deposit, it may require the final determination of a court of competent jurisdiction before paying such claim.

[11]*See, e.g., North New York Savings Bank v. FSLIC,* 515 F.2d 1355, 1364 (D.C.Cir.1975) (concluding that FSLIC was subject to prejudgment interest awards, because Congress enabled it to sue and be sued and placed the FSLIC "in the insurance business");  *Texas American Bancshares, Inc. v. Clarke,* 740 F.Supp. 1243, 1248-49 (N.D.Tex.1990) (concluding that FDIC is not entitled to claim sovereign immunity because it was created with sue-and-be-sued clause and relies on premiums from banks), *rev'd on other grounds,* 954 F.2d 329 (5th Cir.1992).

commercial operation and, ultimately, whether Congress intended the FDIC to be liable for prejudgment interest in the context of erroneous deposit insurance determinations. In our view, the FDIC is not engaged in a commercial enterprise when it acts as insurer of deposits, but rather as a protector of the banking system and the general welfare. More importantly, Congress specifically contemplated delays in FDIC insurance determinations—without specifically providing for awards of prejudgment interest. Thus, following the Tenth Circuit in *Philadelphia Gear,* we hold that the FDIC is immune from prejudgment interest awards in the context of erroneous deposit insurance determinations.[12]

**B. The Attorney's Fee Award**

The FDIC also argues that the district court erred in awarding Spawn attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. Specifically, the FDIC contends that the district court abused its discretion in finding that the FDIC's position—i.e., its reliance on the Spawns' deposit account records to determine the ownership of their certificates of deposits—was not substantially justified. For the following reasons, we agree and, accordingly, reverse the district court's award of attorney's fees.

1. *Attorney's Fees Under the Equal Access to Justice Act*

The Equal Access to Justice Act directs courts to award "to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Act further instructs:

> Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

*Id.* § 2412(d)(1)(B). Finally, the Act defines the "position of the United States" as meaning, "in addition to the position taken by the United States in the civil action, the action or failure to act by

---

[12]We express no opinion regarding whether the FDIC, when acting in other capacities and in other contexts, is immune from prejudgment interest awards. *See, e.g., Northern Bank v. Federal Deposit Ins. Corp.,* 242 Neb. 591, 496 N.W.2d 459 (1993) (holding that FDIC in its capacity as receiver is not entitled to claim immunity from prejudgment interest awards).

the agency upon which the civil action is based." *Id.* § 2412(d)(2)(D).

In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court defined the phrase "substantially justified" in 12 U.S.C. § 2412(d)(1)(A). It explained that the government's position, to be "substantially justified," need not be " "justified to high degree,' but rather "justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." 487 U.S. at 564, 108 S.Ct. at 2549. Although the Court cautioned that, to be substantially justified, a position must be "more than merely undeserving of sanctions for frivolousness," *id.* at 566, 108 S.Ct. at 2551, the Court refused to require the government to demonstrate that its position was "more than merely reasonable." *See id.* at 566-67, 108 S.Ct. at 2551. Ultimately, the Court equated a "substantially justified" position with one having a "reasonable basis both in law and fact." *Id.*

The Court in *Pierce* also resolved questions about the appropriate standard of appellate review with regard to a district court's characterization of the government's position. It held that a district court's determination of whether the government's position has been "substantially justified" should be reviewed under the abuse of discretion standard. *See id.* at 562-63, 108 S.Ct. at 2549. In so holding, the Court reasoned: "We think that the question whether the [g]overnment's litigating position has been "substantially justified' is ... a multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop." *Id.* at 562, 108 S.Ct. at 2548.

Thus, we review a district court's determination that the government's position was (or was not) substantially justified for abuse of discretion. *Aguilar-Ayala v. Ruiz,* 973 F.2d 411, 416 (5th Cir.1992); *Perales v. Casillas,* 950 F.2d 1066, 1072 (5th Cir.1992). Underlying findings of fact, of course, are reviewed for clear error. *Aguilar-Ayala,* 973 F.2d at 416; *Perales,* 950 F.2d at 1073. Underlying conclusions of law, however, are reviewed de novo. *Aguilar-Ayala,* 973 F.2d at 416; *Perales,* 950 F.2d at 1072-73. As Judge Friendly has stated, "[i]t is not inconsistent with the discretion standard for an appellate court to decline to honor a purported exercise of discretion which was infected by an error of law." *Abrams v. Interco, Inc.,* 719 F.2d 23, 28 (2d Cir.1983).

2. *The District Court's Award of Attorney's Fees*

The district court in this case found that the FDIC's position in refusing to look behind the bank records of COD 55386 to determine ownership was not substantially justified. In so finding, the district court relied exclusively on this court's holding in *Spawn I.* It stated:

> FDIC has not established that its position was substantially justified. The Fifth Circuit found that FDIC's decision to deny insurance coverage on Mr. Spawn's certificate of deposit was arbitrary and capricious or otherwise not in accordance with law. The Fifth Circuit further found that FDIC's interpretation of the regulation contradicted the unambiguously express directions that they contained. That is the reason for my finding. My finding is not based upon the inconclusive communications back and forth between Mr. Spawn and Ms. Martin concerning the format of the proof of claim. I don't find that there's any evidence to be gleaned from the documents or oral communications that bears upon substantial justification or that bears on bad faith.

Thus, the district court essentially found that, because the FDIC's position with respect to determining ownership of COD 55386 was held to be "arbitrary and capricious" and "not in accordance with law," it was *ipso facto* not substantially justified.

We think that the district court, in determining that the FDIC's position was not substantially justified, misapprehended the governing legal standards. It appears that the district court ignored section 2412(d)(1)(B), which instructs courts to make the substantial justification determination "on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based)." The district court did not consider the entire litigation posture of the FDIC, but concluded that, because the FDIC was unsuccessful in *Spawn I,* its position was not substantially justified. On this score we agree with the First Circuit, that district courts should "refrain from treating every reversal of agency action as the functional equivalent of an "unreasonable position' " under the Equal Access to Justice Act. *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 517 (1st Cir.1987); *see also Pierce,* 487 U.S. at 569, 108 S.Ct. at 2552 ("Conceivably, the [g]overnment could take a position that is not substantially justified, yet win; *even more likely, it could take a position that is substantially justified, yet lose.*") (emphasis added); *Evans v. Sullivan,* 928 F.2d 109, 110 (4th Cir.1991) ("It would be a war with life's realities to reason that the position of every loser in a lawsuit upon final conclusion was unjustified."). As we stated in *Griffon v. United States Department of Health & Human Services,* 832 F.2d 51, 52 (5th Cir.1987), "[m]erely because

the government's underlying action was held legally invalid as being "arbitrary and capricious' does not necessarily mean that the government acted without substantial justification...."

Moreover, after reviewing the record and our decision in *Spawn I,* we are convinced that, under the governing legal standards, the FDIC was substantially justified in relying on the Spawns' deposit account records to determine ownership of their certificates of deposit. After all, even the district court originally found the FDIC's position meritorious enough to warrant granting summary judgment in its favor. This fact alone, of course, does not render the FDIC's position substantially justified, *see Estate of Smith v. O'Halloran,* 930 F.2d 1496, 1501 (10th Cir.1991), but it is a factor weighing in favor of the FDIC. More importantly, in our view, is the confusing nature of 12 C.F.R. § 330.9 (1992)—the particular regulation involved in this case. *See Palermo v. Federal Deposit Ins. Corp.,* 981 F.2d 843, 846 (5th Cir.1993) (noting that new version of regulation, like the older version, is inartfully drafted, internally inconsistent, ambiguous, and irreconcilable). Our decision in *Spawn I,* that the FDIC had to determine whether COD 55386 was in fact jointly owned, rested not on the unreasonableness of the FDIC's position, but rather on a need to make sense out of a confusing regulation. We noted that the first sentence of section 330.9(b) was entirely consistent with the FDIC's position. *See* 925 F.2d at 888. The FDIC's position failed, however, under the second sentence of section 330.9(b), which in a back-handed fashion (and in a way apparently not envisioned by the FDIC) established a different test for determining whether certificates of deposit were jointly owned. *See id.*

Accordingly, we hold that the district court abused its discretion in concluding that the FDIC's litigating position was not substantially justified. The district court's determination, it appears, was "infected with an error of law." Moreover, we are convinced that, although the FDIC's litigating position ultimately proved unsuccessful, it was justified in substance or in the main, to the degree that it could satisfy a reasonable person. *See Pierce,* 487 U.S. at 564, 108 S.Ct. at 2549.

## III. CONCLUSION

The district court erred in awarding Coy Spawn prejudgment interest and attorney's fees. Contrary to the district court's conclusion, the FDIC is immune from prejudgment interest awards in

the context of erroneous deposit insurance determinations.  And with respect to the attorney's fee award, the district court abused its discretion in determining that the FDIC's position was not substantially justified.

The part of the district court's final judgment awarding Spawn prejudgment interest and attorney's fees is, therefore, REVERSED.  In all other respects, the judgment is AFFIRMED.  Each party shall bear its own costs.