**KINGSTON CONSTRUCTORS, INC., Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

Civ. A. No. 93–1812 SSH.

United States District Court, District of Columbia.

Aug. 22, 1994.

Robert K. Cox, Watt, Tieder & Hoffar, McLean, VA, for plaintiff.

Thomas B. Dorrier, Associate General Counsel, WMATA, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's motion for partial summary judgment, defendant's opposition thereto and its cross-motion for summary judgment, and the parties' responses and replies to those pleadings. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, all evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Upon consideration of the entire record, the Court denies plaintiff's motion for partial summary judgment and grants defendant's motion for summary judgment. Although "findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its analysis. *See* Fed.R.Civ.P. 52(a).

*Background*

Plaintiff Kingston Constructors, Inc., ("Kingston") and defendant Washington Metropolitan Area Transit Authority ("WMATA") entered into three separate contracts (Nos. 1Z1049, 1Z7041, and 1Z704A, hereinafter, "the Kingston Contracts") between February 23, 1988, and April 4, 1991. These contracts were for the design, procurement, fabrication, and installation of traction power equipment and cabling for traction power substations and tiebreaker stations. Throughout the performance of these contracts, plaintiff performed extra work and incurred additional costs. In an effort to recover the additional costs from defendant under the "Changes" and "Differing Site Conditions" clauses in the above-mentioned contracts, Kingston submitted claims to WMATA, and appealed the denial of these claims to the Corps of Engineers Board of Contract Appeals ("BCA").

On August 11, 1992, Kingston and WMATA met to negotiate a settlement of the outstanding claims docketed by the BCA as ENG BCA Nos. 5836, 5963, 5954, and 5955. A handwritten contract agreement ("Settlement Agreement") was prepared whereby WMATA agreed to pay Kingston a liquidated sum of $554,000.00 for settlement of the claims. George Schlesinger, president of Kingston, negotiated and signed the Settlement Agreement on behalf of Kingston, and Francis "Buddy" Watson negotiated, signed, and executed the Settlement Agreement on behalf of WMATA. At the bottom of the Settlement Agreement was written "Pay within 90 days." With the 90 days running from August 11, 1992, payment was due by November 10, 1992.

At the negotiations, Watson represented that he was authorized by WMATA to negotiate a settlement amount with Kingston. However, Watson understandably informed Schlesinger that he was required to submit the settlement amount to WMATA's internal funding and review process in order to obtain approval by WMATA's Board of Directors.

On August 20, 1992, Jeffrey Wharton, Kingston's Vice President and Managing Partner, signed and forwarded to WMATA a document entitled "MEMORANDUM OF CONTRACT CLOSEOUT AND OTHER CONTRACT ACTIONS" which formalized the Settlement Agreement for the Kingston contracts. The Memorandum included language stating that WMATA agreed "to make payments to [the] Contractor on or before November 10, 1992." However, WMATA declined to sign the Memorandum. Thereafter, a second "MEMORANDUM OF CONTRACT CLOSEOUT AND OTHER CONTRACT ACTIONS" was drafted to memorialize the Settlement Agreement of August 11, 1992. This version was virtually identical to the August 20, 1992, proposed Memorandum (some of the numbers were slightly changed), except that the line indicating when payment was to be made was changed to require WMATA to "make every reasonable effort to make payments to [the] Contractor by November 10, 1992." Both parties signed the Memorandum on September 2, 1992.

Defendant paid the settlement amount to plaintiff in three installments on May 14, 1993 ($479,000.00), June 4, 1993 ($50,000.00), and June 11, 1993 ($25,000.00). On August 27, 1993, plaintiff filed suit claiming that defendant breached the Settlement Agreement by failing to make payment within 90 days of executing the Settlement Agreement (by November 10, 1992). Plaintiff seeks to recover $33,240.00 in prejudgment interest from defendant WMATA.

Plaintiff now moves for partial summary judgment on the grounds that defendant WMATA is liable for prejudgment interest for defendant's breach of the Settlement Agreement under both federal and District of Columbia law. Defendant moves for summary judgment on all claims on the ground that WMATA is shielded from awards of prejudgment interest by sovereign immunity, or, alternatively, that there is no contractual basis for liability.[1]

---

1. Resolution of the sovereign immunity issue makes it unnecessary to reach the contractual issues, specifically which contract was in effect, and whether WMATA breached the Settlement Agreement by making installment payments after November 10, 1992.

## Analysis

The dispositive issue is whether defendant WMATA is liable for awards of prejudgment interest. In denying plaintiff's motion for partial summary judgment and granting defendant's motion for summary judgment, the Court holds that WMATA has sovereign immunity against awards of prejudgment interest for actions taken in its contract negotiating capacity.

■ WMATA is an instrumentality of each of the signatories—Maryland, Virginia, and the District of Columbia—to the Compact that created WMATA. D.C.Code Ann. § 1–2431 (1981) ("WMATA Compact"). WMATA's sovereign immunity exists because the signatories have successfully conferred their respective sovereign immunities upon it. *Morris v. WMATA,* 781 F.2d 218 (D.C.Cir. 1986). It is well-settled that a sovereign is immune from liability for interest unless it has waived its immunity by statute or contract. *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). *See George Hyman Constr. Co. v. WMATA,* 816 F.2d 753 (D.C.Cir.1987).

■ There are two exceptions to sovereign immunity from awards of prejudgment interest. *Spawn v. Western Bank–Westheimer,* 989 F.2d 830, 833 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1048, 127 L.Ed.2d 371 (1994). First, sovereign immunity can be waived when there is an express contractual or statutory provision consenting to awards of prejudgment interest. *Shaw,* 478 U.S. at 311–13, 106 S.Ct. at 2960. Second, agencies are liable for interest when the legislature sheds the cloak of immunity by giving a governmental agency the status of a private commercial enterprise. *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). *See Shaw,* 478 U.S. at 317 n. 5, 106 S.Ct. at 2963 n. 5. Plaintiff has failed to show that either of the exceptions to sovereign immunity applies.

■ First, defendant WMATA has made no express contractual or statutory waiver of its immunity from awards of interest. There is no provision in the Settlement Agreement which constitutes a waiver of WMATA's sovereign immunity from awards of prejudgment interest. Moreover, nowhere in the WMATA Compact does WMATA consent to liability for such awards. *See* WMATA Compact § 80. In creating WMATA, the signatories, with congressional authorization, expressly provided that WMATA could be liable to some extent for damages arising out of contracts. Section 80 of the WMATA Compact provides that:

> The Authority [WMATA] shall be liable for its contracts and for its torts ... in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this [Compact] shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

The language in § 80 gives consent to "sue-and-be-sued"; however, it is not a waiver of sovereign immunity from prejudgment interest awards. "There can be no consent by implication or by use of ambiguous language.... The consent necessary to waive [sovereign] immunity must be express, and it must be strictly construed." *Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963 (quoting *United States v. New York Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 603–04, 91 L.Ed. 577 (1947)).[2] Waivers must be con-

---

2. Plaintiff urges this Court to extend the holding of *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), to WMATA. In *Loeffler,* the Court held that the "sue-and-be-sued" clause of the Postal Service should be liberally construed so as to constitute a waiver of sovereign immunity from prejudgment interest awards. *Id.* at 554–56, 108 S.Ct. at 1969. However, in *Loeffler,* the Court relied on the Postal Reorganiza-

tion Act, 39 U.S.C. § 401(1), to find that it was part of Congress's general design in passing the Act that the Postal Service "be run more like a business than had its predecessor, the Post Office Department." *Id.* at 556, 108 S.Ct. at 1969 (quoting *Franchise Tax Bd. of California v. United States Postal Serv.,* 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984)). Thus, the *Loeffler* Court concluded that Congress had cast off the Postal

strued strictly in favor of the sovereign and not enlarged beyond what the language requires. *Id.* 478 U.S. at 317–18, 106 S.Ct. at 2963. *See Spawn,* 989 F.2d at 834 (applying *Shaw's* standard of strictly construing sovereign immunity in favor of the sovereign to hold that the Federal Deposit Insurance Corporation is immune when acting as a deposit insurer).

Second, WMATA may not be considered a private commercial enterprise in its exercise of contract negotiations, and therefore has not cast off its cloak of sovereignty in this capacity. The presence of a "sue-and-be-sued" clause, like § 80 of the WMATA Compact, is not dispositive of the question of whether an agency is subject to awards of prejudgment interest. As mentioned above, § 80 of the WMATA Compact provides that WMATA is subject to liability for its contracts and for its torts "in the conduct of any proprietary function." WMATA Compact § 80. To determine WMATA's liability for tort actions, courts have applied the governmental-proprietary function test under § 80. This test comes down to a question of whether WMATA's action at issue should be characterized as a discretionary decision—a governmental function—or ministerial execution of that decision—a proprietary function. *McKethean v. WMATA,* 588 A.2d 708, 713 (D.C.1991) (holding that the design and planning of a transit system is a governmental function because it involves decisions which are discretionary in nature). "The appropriate inquiry is whether a particular activity involves a legislative, administrative, or regulatory policy decision or merely implements such decision. Only the former type of action, a policy decision, is a 'discretionary

function' which should be immune from second-guessing by a jury." *Id.* at 713 (citing *Sanders v. WMATA,* 819 F.2d 1151, 1154–55 (D.C.Cir.1987)).

Under the governmental-proprietary function test, the negotiation and execution of a contract, specifically the Settlement Agreement, is a discretionary function. *See Layton v. United States,* 984 F.2d 1496, 1501 (8th Cir.) (holding that the selection of contractors is clearly a discretionary function), *cert. denied,* —— U.S. ——, 114 S.Ct. 213, 126 L.Ed.2d 170 (1993). *See also McMichael v. United States,* 751 F.2d 303, 306–07 (8th Cir.1985) (holding that the decision to award a government contract to a particular manufacturer involves weighing various facts and policies and thus is discretionary in nature). Therefore, by acting in its discretionary capacity, WMATA cannot be held to have assumed the status of a commercial enterprise. Rather, by entering into the Settlement Agreement with Kingston, WMATA acted in its governmental function for which it retains its sovereign immunity against awards of prejudgment interest. Accordingly, plaintiff's argument that WMATA has assumed the status of a commercial enterprise fails.[3]

Plaintiff argues against sovereign immunity on the grounds that the precedent in this jurisdiction and a District of Columbia statute have already resolved this issue in its favor. First, plaintiff cites *General Ry. Signal Co. v. WMATA,* 875 F.2d 320 (D.C.Cir. 1989) ("*GRS II* "), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990), and *Granite-Groves v. WMATA,* 845 F.2d 330 (D.C.Cir.1988), as precedent for finding a waiver of WMATA's sovereign immunity. However, these cases are inapplicable to the

---

Service's "cloak of sovereignty" and given it the status of a private commercial enterprise. *Id.* 486 U.S. at 556, 108 S.Ct. at 1970. The instant case must be distinguished from *Loeffler* as the Court has found that there is no such express waiver of immunity in the WMATA Compact, and, moreover, no legislative intent to give WMATA the status of a commercial enterprise.

**3.** Plaintiff argues that WMATA has assumed the status of a commercial enterprise because the provision of mass transportation has been held to be a proprietary function. *See Heffez v. WMATA,* 569 F.Supp. 1551, 1553 (D.D.C.1983) (holding that the operation of a subway system is a pro-

prietary function under § 80 of the WMATA Compact for which tort liability may be imposed), *aff'd,* 786 F.2d 431 (D.C.Cir.1986); *Qasim v. WMATA,* 455 A.2d 904 (D.C.) (en banc) (holding that the provision of mass transportation is a proprietary function for which liability for negligence may be imposed), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983). These cases are inapposite because they deal only with the issue of WMATA's tort liability arising from accidents occurring in the operation of a mass transportation system, rather than the issue presented here—liability for prejudgment interest for an alleged breach of a settlement agreement.

case at bar. In *GRS II,* the court found a waiver of immunity from prejudgment interest in the "Changes" clause of the contract in question which authorized "equitable adjustments." *General Ry. Signal Co.,* 875 F.2d at 327. The court held that the "equitable adjustments" clause in a contract imports a doctrine mandating a make-whole remedy that will restore a contractor to the contractor's pre-change circumstances. *Id.* at 327. Therefore, the court held that the "equitable adjustments" clause required compensation for prejudgment interest. *Id.* at 327. The court in *Granite–Groves* relied on *GRS II* similarly to award plaintiff equitable adjustments in the form of interest on the contract price. *Granite–Groves,* 845 F.2d at 342. Because the Settlement Contract between WMATA and Kingston does not come under an equitable adjustment provision, the holdings of *GRS II* and *Granite–Groves* are inapposite.

Lastly, plaintiff contends that WMATA is liable for interest for a liquidated debt under D.C.Code § 15–108, which provides:

> In an action in the United States District Court for the District of Columbia or the Superior Court of the District of Columbia to recover a liquidated debt on which interest is payable by contract or by law or usage the judgment for the plaintiff shall include interest on the principal debt from the time when it was due and payable, at the rate fixed by the contract, if any, until paid.

D.C.Code § 15–108 (1981). However, plaintiff cannot recover interest from WMATA under D.C.Code § 15–108 because interest is not "payable by contract or by law or usage."

The Court concludes that in the absence of any express contractual or statutory waiver, and upon finding that WMATA has not assumed the status of a commercial enterprise in its contract negotiating capacity, WMATA may not be held liable for awards of prejudgment interest. Thus, the Court concludes that WMATA is not liable for any payment of interest resulting from the Settlement Agreement between Kingston and WMATA.

*Conclusion*

For the foregoing reasons, plaintiff's motion for partial summary judgment is denied, and defendant's motion for summary judgment is granted. An appropriate Order accompanies this Opinion.