George **BARTMESS** and Helen S. Bartmess, Plaintiffs-Appellants,

v.

FEDERAL CROP INSURANCE CORPORATION, Defendant-Appellee.

No. 87–4435.

United States Court of Appeals, Fifth Circuit.

May 16, 1988.

Donald K. Carroll, Oak Grove, La., for plaintiffs-appellants.

John R. Halliburton, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for defendant-appellee.

Before RUBIN, KING, and WILLIAMS, Circuit Judges.

(REVISED OPINION)

ALVIN B. RUBIN, Circuit Judge:

The Federal Crop Insurance Corporation refused to pay a claim by a farmer who had insured his rice crop against loss by flooding. The district court held that the farmer had failed to prove that the loss was the result of an unavoidable insured peril, which would have brought it within the coverage of the policy, and therefore the FCIC was not required to pay the claim. Because the issue turned entirely on the credibility of the witnesses and the inferences to be drawn from their testimony, matters entrusted primarily to the trier of fact, we affirm the judgment.

I.

George Bartmess and his wife owned a 3,197–acre farm in Avoyelles Parish, Louisiana, about 15 miles from Marksville. In April, 1983, Bartmess applied to the Federal Crop Insurance Corporation for insurance on the rice crop he planned to plant on 1740.4 acres of his farm. The policy was confirmed on May 3, 1983. Bartmess paid a premium of $15,231.13. Among other provisions, the policy included insurance against "unavoidable loss of production resulting from adverse weather conditions."

In early June, Bartmess notified the FCIC that a flood had destroyed the rice crop. The FCIC denied Bartmess's claim for different reasons at different times, but finally settled on the conclusion that Bartmess had planted into flood waters, which triggered the policy's exclusion for failure to follow good farming practices.

Other farmers in the parish had finished planting by May 17. Bartmess testified that his planting had been delayed by earlier rains. Using an airplane charter service, he began sowing seed on his rice acreage on May 24, continuing on May 26, 27, and 31. He finished shortly after dark on May 31. A farmhand whom Bartmess had employed testified that he ran a cultivator to cover the seed, working behind the plane, and finished between 10:00 and 11:00 p.m. on May 31.

The flooding was the result of back waters, backing up from the Red River into Bayou Natchitoches and from there into Bayou Jeansonne, which borders the Bartmess farm. The back-up process requires some time both because the two bayous are relatively narrow and shallow and because the waters first gradually flood low lands between the Red River and the Bartmess farm. Bartmess presented many witnesses to attest to his farming competence, but no witness testified that flooding of his property could not have been anticipated when he began planting on May 24, late in the planting season. His diary entries in a calendar dated May 23, the day before he began planting, show: "Water beginning to rise. Heavy rains in Ark., Tex. and North La." Thereafter, he recorded daily rises.

Bartmess's son and a field hand testified that the flood actually inundated the farm after the rice had been planted. A farmer who owned land adjoining Bartmess's and a local bank vice-president, who was also the president of the local levee board district, testified that the flood came in the first part of June.

Bartmess testified that some water was seeping into his farm "even as I was planting. And some of this ground was being undulated [sic] that I had first started planting even before I finished planting the rest of it." Bartmess offers the explanation that he intentionally allowed this water to enter the fields through gates and culverts built into the bottom of the levees so that it could cover the newly planted rice crop. The flood, however, allegedly began only after Bartmess had completed planting.

Under the authority granted to it by Congress,[1] the FCIC has issued regulations for the implementation of the provisions of the Federal Crop Insurance Act. These regulations set forth the terms and conditions of the rice crop insurance contracts issued by the FCIC.[2] The regulations place on claim-ants the burden of establishing that losses were directly caused by one or more of the perils insured against.[3] The district court concluded that Bartmess "failed to prove by a preponderance of the evidence that the loss incurred was the result of an unavoidable insured peril," because it had "significant doubts ... that rapidly rising flood waters first threatened and then inundated his property only after rice planting had been completed."

## II.

■ Bartmess first complains that the district court, disregarding general insurance law principles, placed on him an unreasonably heavy burden of proof by requiring him to show that he did not "plant into the flood." Once the insurer raised the defense, however, that Bartmess had not shown that the loss was caused by a peril against which insurance was provided, Bartmess had the burden of proving that he sustained a covered loss.[4] Like the policy issued in *R & R Farm Enterprises, Inc. v. Federal Crop Insurance Corp.*,[5] the policy issued to Bartmess states:

> 8. Claim for Indemnity. (a) It shall be a condition precedent to the payment of any indemnity that the insured (1) establish the total production of rice on the unit and that any loss of production was directly caused by one or more of the insured causes during the insurance period for the crop year for which the indemnity is claimed....

In *R & R Farm Enterprises*, the FCIC had denied a portion of plaintiffs' rice crop insurance claim, stating that much of its loss was due to poor farming practices. The district court placed the burden of proving the poor farming practices on the insurer. This court reversed, holding that the policy clause contained in 7 C.F.R. § 424.7(d)(8)(a) placed this burden on the

---

1. 7 U.S.C. § 1516(b) (1982).

2. 7 C.F.R. §§ 424.1–.7.

3. *R & R Farm Enters., Inc. v. Federal Crop Ins. Corp.*, 788 F.2d 1148, 1151 (5th Cir.1986).

4. *Id.*

5. *Id.*

insured,[6] requiring it to prove that the claimed loss was directly caused by one or more of the perils insured against.[7]

Bartmess seeks to create an issue where none exists by contending that the district court did not follow general insurance law principles. In fact, contrary to Bartmess's assertion, the district court applied general insurance principles. Moreover, as the district court observed, to the extent such principles were inconsistent with Bartmess's contract, they were not applicable. This principle is incontrovertible because it is dictated by the federal statute.[8]

### III.

District court findings of fact prevail unless clearly erroneous.[9] This standard applies to a district court's determination that a plaintiff has failed to carry its burden of proof.[10] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that the district court committed a mistake.[11] This circuit has elaborated on the *U.S. Gypsum* rule, stating that clear error exists if (1) the findings are without substantial evidence to support them; (2) the trial court misapprehended the effect of the evidence; or (3) although there is evidence that, if credible, would be substantial, the force and effect of the testimony, considered as a whole, convinces the appellate court that the findings are so against the great preponderance of credible testimony that they do not reflect or represent the truth or right of the case.[12] If, however, considering the entire record, the district court's conclusion is plausible, it must be upheld.

The FCIC presented the testimony of an Army Corps of Engineers hydraulic engineer that, in his opinion, the flood waters had overtopped Bartmess's levee by May 26 or May 31 at the latest. The engineer based his opinion on gauge readings along the Red River. Because high waters in the river had to back up in the bayous and low lands before they could reach Bartmess's farm, the engineer estimated that a reading taken at the river gauge would show a water level two to four feet higher than a simultaneous reading taken at Bartmess's levee. The engineer admitted that this estimate of differences in water level was an educated guess, there was no data that could confirm or deny this guess, he did not know how much water it took to fill up the backwater flood area before it could reach a certain level, and the only data he used in reaching his conclusion were the river gauges and a survey of Bartmess's levee, which was 17½ miles from the primary gauge.

Bartmess, a geologist, and the levee board president all testified that they measure lag time in days, not feet. They predicted that it would take from ten days to three weeks for a gauge reading at Bartmess's levee to conform to a reading taken at the river gauge. The engineer stated that measuring lag time in this manner would be consistent with his conclusion. An FCIC exhibit indicates, however, that measuring lag time by ten days to three weeks would result in the levee overtopping Bartmess's levee no earlier than May 31.

The FCIC also adduced evidence that half way through planting Bartmess had returned to Alexandria Seed Company seed that had germination reports and then purchased from a farmer named Stuts cheaper seed that had no germination reports. When the FCIC claims adjuster, James Roland Joubert, first interviewed Bartmess

---

**6.** *Id.*

**7.** *Id.*

**8.** 7 U.S.C. § 1506(k) (1982).

**9.** Fed.R.Civ.P. 52(a).

**10.** *See McDaniel v. Temple Indep. School Dist.,* 770 F.2d 1340, 1347 (5th Cir.1985).

**11.** *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

**12.** *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1395–97 (5th Cir.1983).

about his loss, Bartmess reported only that he had planted the Alexandria Seed Company seed, part of which the adjuster later learned had been returned. Only after further interrogation did Bartmess disclose the later seed purchase and state that he had planted the Stuts seed.

The trial court found in effect that Bartmess failed to carry his burden of proving that the loss resulted from "unavoidable loss of production resulting from adverse weather conditions" and instead concluded, at least inferentially, that Bartmess planted his crop after he knew or should have known that this was a vain endeavor. Water from the swollen Red River eventually backed into Bayous Natchitoches and Jeansonne and overtopped Bartmess's three-and-one-half foot levee, which was at an elevation of 45 feet above sea level. The district court apparently concluded either that this happened before May 31, while Bartmess was still planting, or that it could have been expected by the time he began planting. It appears to have drawn the inference that, by the time Bartmess was able to begin planting, he knew or should have known that he would be planting on land likely to be flooded and decided to plant the cheapest seed available.

Although FCIC claims adjuster Joubert testified that when he visited the property, he saw no rice growing on levees and field boundaries where it likely would have grown even if planted by air into flood waters or shortly before the land was inundated, the district court might well have drawn conclusions favorable to Bartmess. The court might have credited the testimony that Joubert did not inspect a sufficient amount of land and that in fact, some rice seed may have sprouted and developed into rice plants on that portion of the land not inundated by the flood. That would prove, however, only that the rice crop was planted, not that the rice was sowed before the land was inundated or in imminent danger of flooding. If seed had been sowed by air, some seed would have fallen on the levees, not only on the fields.

The district court was not bound to believe the FCIC witnesses. It might well

have credited the argument that Bartmess could not have anticipated being flooded because the flood waters eventually topped his levees by only inches, and because Bartmess had testified that, when he finished planting, the waters were 2½ feet below the top of the levees. The court might also have credited the argument that, had the rise been only slightly less, the levees would have held, and the crop would have been harvested. On the paper record presented to us, therefore, the evidence supporting Bartmess's claim was ample.

But that evidence was not compelling enough to make it incumbent upon the district court to have credited either Bartmess's testimony or this version of events. As an appellate court, we read only typed words on a cold, white page. The balance of proof is not struck by counting witnesses or weighing words. The district court sees and hears the witnesses, and the Federal Rules of Civil Procedure wisely dictate that its findings of fact, including those based on documentary evidence, be treated with deference.[13] Having read the record in its entirety, we cannot say that the court erred, let alone that it was misled into clear error.

For these reasons, the judgment is AFFIRMED.