United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 02-30976

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

MICHAEL A. MERCADEL,

Defendant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

(02-CR-170-1-J)

Before SMITH, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The government appeals the district court's grant of defendant Michael A. Mercadel's motion to suppress evidence related to the prosecution of Mercadel for felony possession of a firearm, 18 U.S.C. § 922(g)(1), possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

of a drug trafficking offense, 18 U.S.C. § 924(c)(1). The district court suppressed the evidence on grounds that it was obtained in violation of Mercadel's Fourth Amendment rights. Finding that this determination was not in error, we now affirm the district court.

## I. Background

A. <u>Factual Background</u>

The facts underlying this case, as testified to at the suppression hearing, are hotly disputed. On May 20, 2002, at 11:30 a.m. Sergeant Todd Morrell of the New Orleans Police Department ("NOPD") made a routine traffic stop of a company delivery truck driven by Frank Smith. Upon stopping the truck, Morrell spotted marijuana in plain view and arrested Smith for possession with intent to distribute the drug. Because the company that owned the truck informed Morrell that it would not pick the truck up until later, Morrell feared that the truck would be stolen. Accordingly, he asked Smith whether anybody else could secure the vehicle. Smith indicated that his cousin, who lived three doors down from the stop, could do so. Morrell testified that he then walked to the cousin's house to attempt to secure the vehicle as a "favor" to Smith.

From this point the suppression hearing testimony of Morrell and Mercadel wildly differed. Morrell testified that as he approached the cousin's house at 2615 Allen Street, he found the front door open but the screen door closed. A large curtain

hanging from the screen door obstructed his view into the house, but a gap existed between the top of the door and the curtain. As Morrell got closer to the house, he "smelled marijuana smell, like burning marijuana."[1] Morrell, who is 6'3", then balanced on his toes on the two-inch wide ledge of the door frame, cupped his eyes with his hands to block out the glare of the noonday sun, and saw through the gap a bag of marijuana identical to the bag found in Smith's truck lying on a table in the house.[2]

Morrell testified that he then retreated from the door, summoned Officer Robert Gisevius to back him up, and then knocked on the door.[3] Mercadel answered, at which point Morrell asked him to exit the house, whereupon Mercadel was secured by Gisevius. Morrell then opened the screen door, told Goodman to exit, and had

---

[1]Morrell testified that he did not find any evidence of recently smoked marijuana once he entered the house, although he claimed that he still "smelled it." Morrell also acknowledged that a drug test of Mercadel, conducted immediately after arrest, revealed that he had not been smoking marijuana. Mercadel testified that Kevin Goodman, the other person in the house when Morrell approached, had not been smoking marijuana either.

[2]While the suppression hearing transcript is far from clear on this point, it at least appears that Morrell claims he saw Mercadel sitting on the couch near the table with the marijuana. A subsequent affidavit of Morrell, made in the hope of reopening the suppression hearing, indicates that Morrell saw another man, apparently Goodman, in the living room as well. The police report, also made available after the suppression hearing, states that Morrell saw two men in the living room along with the drugs.

[3]It is unclear from Morrell's testimony at the suppression hearing how much time elapsed between his retreat from the door, and return to knock on the door. Morrell's supplemental affidavit indicates this occurred in a matter of "seconds," suggesting Gisevius was nearby.

Gisevius secure Goodman.  Thereupon Morrell entered the house.

Once inside, Morrell immediately determined that the bag on the table contained marijuana.  He then conducted a protective sweep of the premises incidental to arrest to determine whether there were any other occupants hidden in the house.  While Morrell found no other people, he did find two weapons and more marijuana all in plain view.

In contrast, Mercadel testified that he was home on the day in question in the kitchen cooking red beans and rice for his cousin, Goodman.  Mercadel states that Morrell arrived at his door, knocked, and then asked him for identification.  When Mercadel went to his bedroom to get his ID, Morrell entered his house without permission.  Mercadel claims that he told Morrell to exit unless he had a warrant, but that Morrell refused, making Mercadel and Goodman leave the house instead.  On cross-examination, Mercadel claimed that the guns and drugs found at his house were planted by the police.

B.  Procedural Background

Mercadel was indicted for narcotics possession and firearms violations.  He filed a motion to suppress the evidence collected at his house on grounds that it was obtained in violation of his Fourth Amendment rights.  On July 17, 2002 the district court conducted a suppression hearing, where Mercadel and Morrell testified as noted above.  The defense also called an investigator in the public defender's office, Bill Healy, who testified that he

-4-

had visited Mercadel's house subsequent to the incident at issue. He stated that he visited the house at noon, and that the glare of the sun prevented him from seeing into the house through the screen door, even with his hands cupping his eyes. On cross-examination, Healy admitted that the electricity was not on in the house when he visited, in contrast to the day Morrell stopped at the house.

On August 27, 2002 the district court granted Mercadel's motion to suppress. The court stated that it "did not find either Sergeant Morrell's testimony or the defendant's to be credible." It questioned whether in fact Morrell went to Mercadel's house in an effort to get Smith's cousin to secure a company truck. The court found it "patently incredible" that Morrell would do an apprehended felon a "favor," especially where doing so was contrary to NOPD policy.[4] Rather, it found it "infinitely more likely" that Morrell was acting on a tip from Smith that drugs would be found in Mercadel's house.

The district court also did not believe Morrell's story of how he developed probable cause of drug activity while approaching Mercadel's home. It found Morrell's statement that he smelled burning marijuana unbelievable in part because Mercadel tested negative for marijuana following the arrest. It also discounted Morrell's claim that he saw the marijuana through the screen door,

---

[4]The district court explained that "[s]eeking to secure a vehicle with a relative of a driver who is not the owner of the vehicle is evidently not the policy of the NOPD."

based on the logistical difficulties inherent in Morrell's version of events. The district court concluded that because Morrell lacked probable cause to enter Mercadel's house, any contraband he saw once inside was obtained in violation of the Fourth Amendment because he was not "lawfully in a position from which to view" the items.

In the alternative, the district court held that even if Morrell had developed probable cause to believe there was marijuana in the house, he had no "right of access" to the drugs because there were no exigent circumstances requiring him to enter Mercadel's house without a warrant. The district court found that the occupants of the house were not aware of the police presence, and therefore, the police had time to obtain a warrant.

In response to the district court's adverse ruling, the government filed a limited motion to reopen the suppression hearing. With that motion the government attached affidavits by Morrell and Gisevius, which were largely directed at establishing exigent circumstances justifying Morrell's warrantless intrusion into Mercadel's home. The government also sought to introduce commendations awarded to Morrell to boost his credibility, as well as the police report filed immediately following the incident. The district court denied the government's motion.

The government timely appealed the rulings on both the motion to suppress and the motion to reopen the evidentiary hearing.

## II. Analysis

A. <u>Probable Cause</u>

We review the district court's ruling on a motion to suppress in the light most favorable to the party that prevailed below (here, Mercadel). <u>United States v. Foy</u>, 28 F.3d 464, 474 (5th Cir. 1994). The district court's legal determinations are reviewed de novo, while its factual findings are examined for clear error. <u>United States v. Jones</u>, 239 F.3d 716, 719 (5th Cir. 2001). A factual finding is clearly erroneous if we are "left with the definite and firm conviction that the district court committed a mistake." <u>Bartmess v. Federal Crop Ins. Corp.</u>, 845 F.2d 1258, 1261 (5th Cir. 1988). In <u>Bartmess</u>, we reiterated the factors that indicate that a factual finding is clearly erroneous:

> [C]lear error exists if (1) the findings are without substantial evidence to support them; (2) the trial court misapprehended the effect of the evidence; or (3) although there is evidence that, if credible, would be substantial, the force and effect of the testimony, considered as a whole, convinces the appellate court that the findings are so against the great preponderance of the credible testimony that they do not reflect or represent the truth or right of the case.

<u>Id.</u> If we determine that, viewing the record as a whole, the district court's conclusion is plausible, then we must uphold the district court's factual findings. <u>Id.</u>

Here, the evidence in question was found during a warrantless entry by Morrell into Mercadel's home. "A warrantless intrusion into an individual's home is presumptively unreasonable unless the

person consents or probable cause and exigent circumstances justify the encroachment." Jones, 239 F.3d at 719. The government does not contend that Mercadel consented to Morrell's presence in his home; rather, it argues that Morrell had probable cause to believe that drug trafficking was occurring within the house, and that exigent circumstances required a warrantless entry.

The government argues probable cause arose from two facts: Morrell saw drugs through the screen door and smelled "burning marijuana" as he approached the house. The district court disbelieved Morrell's testimony on both accounts. While acknowledging that on review it is not our "function to pass on a district court's determination regarding the credibility of the witness," United States v. Alaniz-Alaniz, 38 F.3d 788, 790 (5th Cir. 1994), the government nonetheless contends that the district court clearly erred in finding that Morrell neither saw nor smelled marijuana prior to entering Mercadel's home.

As to the former, the district court based its conclusion that Morrell had not seen marijuana prior to entering the house on the logistical difficulties it perceived in Morrell's version of how he did so. Specifically, the district court questioned whether Morrell, a 6'3" large man, could in fact have balanced on a two-inch ledge on his toes, as he claimed he had done to see through the portion of the screen door not covered by the curtain. The court also doubted whether Morrell could have seen anything through the screen because of the glare of the noonday sun, relying in part

-8-

on the difficulties Healy encountered in attempting to do the same thing a few weeks later. Our first question on review, then, is whether these conclusions are "plausible" given the record as a whole.

The government argues that the district court's conclusions are not supportable by substantial evidence in the record. The government first takes issue with the district court's concerns about Morrell's seeing over the curtain, arguing that the curtain was sufficiently low on the door that Morrell could have easily looked over the door while on his toes. It argues that this conclusion is bolstered by Healy, who testified that at six feet he could see over the curtain while on his toes. The government also suggests that the curtain was translucent, meaning that Morrell may have been able to see marijuana through the curtain. As for the glare from the sun, the government argues that the district court clearly erred in crediting Healy's testimony because of the different conditions present when Healy and Morrell visited the house. Specifically, the government contends that the absence of light and colorful furniture in the house when Healy visited makes his testimony inapposite as to the conditions when Morrell visited.

Unfortunately for the government, many of its arguments on appeal bear little resemblance to the facts testified to by Morrell at the suppression hearing. While it may well have been possible to see through the curtain, as the government now alleges, Morrell testified that he "didn't look through the curtain." Thus, it was

far from erroneous for the district court to discount a method of viewing the drugs the officer explicitly disclaimed. As for the height of the curtain, Morrell testified at the suppression hearing that he saw over the curtain by standing on his toes on the two-inch wide door frame. Accordingly, it was his version of events that the district court had the duty to credit or not credit, leaving the government's argument on appeal that the curtain was "low hanging" divorced from the evidence.

Given Morrell's large stature, it was not clearly erroneous for the district court to refuse to credit testimony that Morrell peered at the drugs while standing on his toes on a narrow ledge. Such a judgment call is properly in the hands of the district court, which had the opportunity to physically view Morrell, rather than in ours, which are tied by the limits of a cold record. Likewise, while there were differences in the condition of the house when Healy and Morrell visited, determining which conflicting story to credit on the impact of the sun's glare on the screen door was a determination for the district court. It made the decision to credit Healy, and not Morrell, and we are loath to disturb that judgment here.

Perhaps recognizing the futility of challenging the district court's findings on whether Morrell saw marijuana from the ledge, the government in a footnote adds the argument that the district court clearly erred in not finding that Morrell smelled burning marijuana while approaching the house, as he testified. As the

-10-

government correctly notes, if in fact Morrell smelled marijuana on his approach to the house, that alone would qualify as probable cause to believe that illegal narcotics activity was going on in Mercadel's home.  See United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc) (holding that smelling marijuana in a car stopped at an immigration checkpoint constituted probable cause of drug activity).  The court discounted Morrell's story of smelling burning marijuana both based on the failure of Morrell to find any evidence in the house of recently smoked marijuana and because a drug test of Mercadel, conducted immediately after his arrest, indicated he had no marijuana in his blood stream.

Again, the government's burden on appeal is to show that district court clearly erred.  But the government fails to explain why the district court's factual finding was not "plausible" given the record as a whole.  The failure of the police to find any evidence of recently smoked marijuana within the house, combined with the drug test that Mercadel cleared, forms a sufficient evidentiary basis for the district court's conclusion that there was no burning marijuana for Morrell to smell.[5]  Thus, this factual

---

[5]As noted above, there was another person within the house that could have been smoking marijuana, Mercadel's cousin Kevin Goodman. The record does not indicate whether Goodman passed a drug test following the seizures in Mercadel's house.  But Mercadel testified at the suppression hearing that Goodman had not been smoking marijuana at his house, and although the district court generally did not credit Mercadel's testimony, it appears to have believed this fact (perhaps because it was in accord with the lack of physical evidence of recently smoked marijuana).  Seeing no reason to disturb this credibility determination on appeal, we find no

finding too was not clearly erroneous.

Because we find that the district court did not clearly err in determining that Morrell neither saw nor smelled marijuana in Mercadel's house prior to entering, and because the government offers no other basis from which Morrell developed probable cause of drug activity in Mercadel's home prior to entering, the district court was correct in concluding that Morrell entered the house without probable cause.[6] Because such an entry violates the Fourth Amendment, the district court correctly suppressed the evidence found within. Jones, 239 F.3d at 719.[7]

B. Reopening the Suppression Hearing

The government next argues that even if the district court did not err in finding that the search in question violated the Fourth Amendment based on the record in front of it, it did err in refusing to reopen the suppression hearing to take additional evidence. We review the district court's denial of a motion to reopen a suppression hearing for an abuse of discretion. United

---

clear error here.

[6]The government asserts for the first time in its reply brief that Morrell may have seen marijuana in plain view when he "knocked and talked" at Mercadel's door. The government does not point to any portion of the record which would support such a factual finding, however. And, in any event, we decline to consider an argument raised for the first time in the reply brief. In re Liljeberg Enters. Inc., 304 F.3d 410, 427 n.29 (5th Cir. 2002).

[7]Because Morrell lacked probable cause to enter Mercadel's home, we need not reach the question of whether there were exigent circumstances present justifying his warrantless intrusion.

States v. Hassan, 83 F.3d 693, 696 (5th Cir. 1996) (per curiam). This standard reflects the deference we owe the district court as the judicial actor best positioned to resolve the issue in question. Koon v. United States, 518 U.S. 81, 100 (1996). Still, where the district court makes an error of law, it by definition abuses its discretion. Id. at 101.

The district court denied the government's motion to reopen the suppression hearing on alternative grounds. First, the district court interpreted the government's motion as one seeking to introduce evidence of exigent circumstances justifying a warrantless entry. The district court held that allowing such evidence would amount to a "second bite at the apple," not to be allowed "[i]n the absence of any newly discovered evidence." Second, the district court explained that it had reviewed the additional evidence the government sought to introduce, and it found "that it would not likely change the Court's findings on the issue of the witnesses' credibility, which was based largely on observation of the witnesses and their demeanor." The district court finally added that it believed the additional evidence in fact hurt the government in some ways, as there were discrepancies between the police report and Morrell's testimony at the suppression hearing.

On appeal the government first disputes the district court's two-bite rationale, arguing that the lower court applied the wrong standard for reopening a suppression hearing by mistakenly applying

the standard for a new trial.  Instead, the government contends the district court should have applied a more liberal standard to allow the creation of a more complete record on appeal.  Here, the government urges, application of a looser standard would result in reopening the hearing on the issue of exigent circumstances.

Assuming arguendo that the district court applied the wrong legal standard in determining whether or not to reopen the suppression hearing, its alternative ground for refusing to do so- that the new evidence would not effect its determination-is sufficient for us to find that the district court did not abuse its discretion.  While the district court has wide discretion in determining when to reopen an evidentiary hearing, it abuses its discretion where the new evidence creates a genuine factual dispute on an outcome determinative fact.  United States v. Wilson, 249 F.3d 366, 372, 373 n.13 (5th Cir. 2001).  The new evidence offered by the government here does not meet this standard.  None of the new evidence the government sought to introduce either significantly bolsters Morrell's credibility or goes to whether he in fact had probable cause to believe drug trafficking was occurring in Mercadel's home.[8]  As for exigent circumstances, which

_____

[8]The government also sought to introduce Morrell's departmental commendations to boost his credibility.  But as the district court noted in its denial of the motion to reopen the suppression hearing, its distrust was based on Morrell's demeanor while testifying at the suppression hearing.  It stated that its opinion about Morrell would not be altered by this additional evidence, and therefore failure to reopen the hearing to admit it is not an abuse of discretion.

-14-

most of the new evidence is directed toward, Mercadel correctly responds that this issue is moot given the district court's finding that Morrell lacked probable cause to enter Mercadel's home. As such, the failure of the district court to allow the government the opportunity to introduce new evidence cannot be considered an abuse of discretion.

The government argued below that the new evidence would disprove the district court's conjecture that Morrell was inspired to go to Mercadel's home on the basis of a tip by Smith. In its reply brief on appeal, the government adds that this erroneous factual determination so infected the remainder of the district court's findings that the suppression hearing should be reopened to allow the district court to correct this mistake. Specifically, the government argues that minus the erroneous assumption that Morrell received a tip from Smith, there is no other credible explanation for Morrell's entry into Mercadel's home other than the fact that he saw or smelled marijuana when approaching the house.

Whatever the merits of this argument, most of the "new evidence" that the government seeks to introduce to disprove the "tip" theory is not new evidence at all. Morrell's new affidavit merely reiterates his testimony from the suppression hearing that he did not approach Mercadel's house on the basis of any information related to Mercadel's drug activities. The district court already weighed and disregarded this story as incredible. The affidavit of Gisevius does confirm Morrell's account that he

did not approach Mercadel's house on the basis of a tip.  But we agree with Mercadel that the affidavit of Morrell's subordinate, who was not necessarily privy to all conversations between Smith and Morrell, is insufficient to create so great a factual dispute on the existence of a tip as to make the failure to reopen the suppression hearing an abuse of discretion.[9]

### III.  Conclusion

Because the district court did not err in granting Mercadel's suppression motion on the basis of a violation of his Fourth Amendment rights, the district court's order suppressing evidence is AFFIRMED.

ENDRECORD

---

[9]It is worth noting that even if, as the record seems to support, Morrell received no tip that Mercadel was engaged in drug trafficking prior to approaching his house, this does not, as the government contends, prove that he developed probable cause to search the house prior to entering.  Contrary to the government's argument, there are an infinite number of possible reasons that Morrell entered Mercadel's home.  The district court discounts the only one proffered by Morrell that was consistent with the Constitution.  And as that determination is not clearly erroneous, further speculation as to Morrell's motivations is irrelevant.

CLEMENT, Circuit Judge, dissenting:

Although a rigorous standard of review applies to this case, I must conclude that the district court clearly erred in finding that Morrell could not have gained knowledge of the existence of the drugs either by viewing them through the screen door, or by smelling burning marijuana from the outside of Mercadel's house. The district court's relied-upon "facts"—namely its baseless hypotheses that the police acted on a tip or had been surveying Mercadel's residence—dictate an affirmative answer to the question of whether Morrell had probable cause to enter Mercadel's house. Under *Bartmess*, a factual finding is clearly erroneous if this Court "is left with the definite and firm conviction that the district court committed a mistake." 845 F.2d at 1261. I am left with this conviction given the facts of this appeal. As such, I respectfully dissent.

The majority bases its opinion on the fact that credibility determinations drove the district court's decision. Apparently, the only testimony the district court found credible was Healy's testimony that, when he attempted to see inside the house in the same manner and at the same time of day as Morrell, he could see nothing. Although the time of day was the same, several key conditions were different when Healy went to Mercadel's house, a fact noted by the majority. For instance, there was testimony in the district court that an interior light was illuminated in Mercadel's house on the day of the search. When Healy attempted to duplicate the conditions, the electricity was off. For that reason alone, it is very possible that Morrell would have been able to see more on the day of his entry than Healy was able to see when he peered through the screen door. Further, Morrell is three inches taller than Healy. This means that Morrell likely would not have had to strain to see over the curtain on the screen door. Finally, the photographs of the crime scene taken by each side are ambiguous, and could have supported Morrell's testimony equally as well as the district court

-17-

found them to support Healy's.

Despite the district court's findings to the contrary, a factual issue remains as to how Morrell knew that there was marijuana in the front room of Mercadel's house and whether exigent circumstances existed. The district court based its decision, in part, on the unsubstantiated notion that it was "far more likely that [Morrell] learned of the presence of the marijuana through a tip or suspected it based on surveillance of the residence." Under *Bartmess*'s first factor (*i.e.*, clear error exists if the district court's findings are without substantial evidence to support them) this hypothesis is without substantial supporting evidence. 845 F.2d at 1261. To the contrary, substantial supporting evidence exists only to invalidate the district court's conjecture. The new evidence proffered by the Government in requesting a reopening of the suppression hearing, including affidavits from Morrell and Gisevius, directly contradicts the court's flimsy hypothesis that some sort of tip or surveillance existed that would have given the officers ample time to request a warrant. Given the lack of evidence for the "tip hypothesis," the district court's fact findings do not seem plausible. *See id.* Accordingly, the district court clearly erred by finding that Morrell did not see the marijuana in plain view because it based its conclusion, in part, on the fact that Morrell likely acted on a tip or as a result of surveillance of the residence.

Even if the district court's hypothesis were convincing, several troubling, unexplained facts remain. First, the district court's conclusion is in tension with the fact that Morrell called for back-up after stepping away from Mercadel's door. Regardless of Morrell's credibility, there is no explanation for why he immediately called for back-up, other than his perception that a crime was in progress at Mercadel's house. Second: If Morrell never saw or smelled drugs, but instead acted on a tip, why didn't his backup accompany him to the house in the first place? Such inconsistencies, along with

-18-

the knowledge that Morrell is a highly decorated police officer, make it surprising that the district court discounted his testimony so readily.

Finally, in addition to the fact that Morrell developed probable cause when he plainly viewed or smelled the marijuana, it is indisputable that exigent circumstances existed to justify his warrantless entry. This is clear, not only from the nature of the contraband Morrell viewed from outside the house, but also because Goodman could have easily seen a 6'3" tall police officer peering inside the screen door from where he was sitting in the front room. As such, Goodman very well could have destroyed the contraband, or worse, used the sawed-off shot gun that was tucked into the couch near him when he saw Morrell.

For the foregoing reasons, it is evident that the district court clearly erred in finding that there was no evidence to support the contention that Morrell either plainly viewed or smelled the marijuana, and that there were no exigent circumstances justifying a warrantless entry. Consequently, I would reverse the district court's grant of the motion to suppress.