United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 18, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30701

_____

JOANN WAGGONER
Plaintiff-Appellant

versus

UNITED STATES OF AMERICA
Defendant-Appellee

_____

Appeal from the United States District Court for
the Western District of Louisiana
(01-CV-2472

_____

Before SMITH, BARKSDALE, AND DENNIS, Circuit Judges.

PER CURIAM:[1]

Plaintiff, Joann Waggoner, appeals the district court's decision in her suit under the Federal Torts Claim Act, 28 U.S.C. § 1346(b), in which she alleged that malpractice by the Veterans Affairs Hospital ("VA") in Alexandria, Louisiana.

Mrs. Waggoner challenges the district court's decision that Plaintiff failed to show her entitlement to relief because she had not sufficiently established that the staff of the Alexandria VA breached a relevant standard of care. She argues that the district

---

[1] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

court erred in its evaluation of the facts.[2] Because the district court did not clearly err in evaluating the facts relevant to determining breach of a relevant standard of care, we affirm the district court's decision.

BACKGROUND

Wilmer Waggoner suffered from multiple medical conditions; in addition to cardiovascular problems, elevated triglycerides and moderately elevated cholesterol, and carotid vascular disease, he had chronic obstructive pulmonary disease, a history of gastroesophageal reflux disease, and degenerative joint disease centering on his cervical and lumbar spine. Until his death, he smoked two packs of cigarettes a day.

In May 1992, he underwent a catheterization at the Rapides Regional Medical Center. In August 1992, he became a patient at the VA. He was notified of appointments by letter, including those rescheduling of cancelled appointments. In September of that year, he complained of chest pain during a visit. As a result, he was admitted to the VA in February 1993 and given a thallium stress test, which was negative for ischemia (lack of blood flow and oxygen to the heart muscle). At the time, he was advised of the

---

[2] Mrs. Waggoner also argues that, in relying on Hemingway v. Ochsner Clinic, 722 F.2d 1220 (5th Cir. 1984), the district court applied the wrong standard of proof on the question of causation in fact, resulting in a flawed analysis of the evidence. As the trial court actually ruled that Mrs. Waggoner had not met her burden in proving a breach of a relevant standard of care, this argument will not avail her here.

need to follow a low-sodium, low-cholesterol diet. His discharge summary indicated that Mr. Waggoner suffered from arteriosclerotic heart disease (also called coronary artery disease) with angina pectoralis.

Mr. Waggoner returned to the VA that August, where he underwent ultrasounds that revealed blockage in his arteries. He was referred to the cardiology clinic, but was not seen there until late March 1994 due to cancellations by both VA (of a December appointment) and Mr. Waggoner (of an early March appointment). During the late March visit, he indicated he had not experienced chest pain in the preceding month, and that nitroglycerin had alleviated his prior chest pain. In November he was admitted to the VA having suffered a transient ischemic attack, and was diagnosed with further blockages in his carotids. That same month, he had a carotid endarterectomy; he underwent a second in January 1995. By July 1995, bruits (noises in the vascular system indicating impeded arteries) had returned.

In January 1996, Mr. Waggoner returned to the VA complaining of chest pain. He underwent a stress test, which revealed a left bundle branch block ("LBBB"). On April 11, 1996, Mr. Waggoner returned to the VA for a flu appointment, at which time he complained of angina. During that visit, the VA cancelled Mr. Waggoner's scheduled stress test, because the presence of an LBBB makes regular stress tests much less useful in identifying ischemia. The VA scheduled a thallium stress test for July 25,

1996, but Mr. Waggoner cancelled the test. On August 16, 1996, Mr. Waggoner went to the VA complaining of back pain and continued angina that was relieved by nitroglycerin. The treating physician, Dr. Mondal, suggested that Mr. Waggoner admit himself to the hospital for further tests, but Mr. Waggoner refused admission, indicating he would return for admission on August 21. In fact, Mr. Waggoner did not appear for admission until August 26.

During that hospitalization, Mr. Waggoner told his doctors that his chest pain had been worsening for the last year, and had occurred daily for the last two weeks. A thallium stress test was prescribed, but not performed, for reasons not explained in the record. Instead, a regular stress was administered, but terminated due to leg fatigue. Dr. Mondal ordered 24-hour telemetry during the hospitalization; Mr. Waggoner would leave the ward to smoke, carrying him out of range of the monitor.

Mr. Waggoner went back to the VA on September 30, indicating that his chest pain had been reduced; Dr. Mondal's notes indicated a thallium stress test should be scheduled. None was scheduled until March 5, 1997 but the record does not indicate whether the VA or Mr. Waggoner is responsible. Mr. Waggoner did not appear for the March 5 test, nor for a subsequent April 4 clinic appointment. He next returned to the VA on May 5, 1997, at which time a thallium stress test was scheduled for May 20.

The results of that test indicated that his coronary artery disease had worsened, that he suffered from ischemia, and that he

had a permanent defect on the heart wall. Dr. Mondal accordingly ordered a battery of tests, scheduled for June 3, 1997 and then rescheduled for June 17. Mr. Waggoner did not appear for the first appointment and cancelled the second; the tests were not rescheduled.

On September 3, 1997, Mr. Waggoner arrived at the VA complaining of chest pain. Dr. Mondal referred Mr. Waggoner to the cardiology clinic, and informed Mr. Waggoner that he could be admitted for more tests, but the patient declined. On November 14, 1997, Mr. Waggoner once again returned to the VA complaining of chest pain that radiated across his chest and that was alleviated by nitroglycerin. When told that Mr. Waggoner had not yet been seen by a cardiologist, Dr. Mondal requested he be seen by a cardiologist within the "next week or so" and instructed Mr. Waggoner to call if not given an appointment in the next two weeks. Although the appointment was not scheduled until December 16, 1997, Mr. Waggoner never contacted Dr. Mondal.

During Mr. Waggoner's course of treatment at the VA, his lipid levels were tested. His cholesterol ranged from 197 to 295, falling frequently within the 200-240 range, which was described at trial as "moderate risk". His triglyceride levels ranged between 300 and 500. He received no medication for hyperlipidemia, but was instructed to change to a low cholesterol/low sodium diet, to exercise and to stop smoking. At trial, defendant's expert witness testified that it was not a breach of the standard of care

5

to treat Mr. Waggoner with diet and exercise rather than with medication, given the severe side effects of such drugs. Plaintiff's experts both testified that, in their opinion, Mr. Waggoner should have been medicated, but did not indicate that medication was the only means by which hyperlipidemia could be treated.

On December 13, 1997, Mr. Waggoner suffered a heart attack. He died on January 4, 1998. The cause of death was described as respiratory failure, congestive heart failure, myocardial infarction, and coronary heart disease.

Mrs. Waggoner filed suit on November 2001, which was initially dismissed for lack of jurisdiction. On appeal, this court reversed and reinstated the action, which then went to a bench trial on April 13, 2005. The district court rendered judgment for the United States, awarding appellant nothing. She timely filed a notice of appeal.

STANDARD OF REVIEW

Challenged factual findings "shall not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a); see also Dickerson ex rel Dickerson v. United States, 380 F.3d 470, 474 ("The standard of review for factual determinations in a FTCA case is whether the district court's findings are clearly erroneous." (citing Low v. United States, 795 F.2d 466, 470 (5th Cir.1986); Ferrero v. United

6

<u>States</u>, 603 F.2d 510, 512 (5th Cir.1979)). Findings are clearly erroneous when "after reviewing the entire evidence, the Court is left with the definite and firm conviction that a mistake has been committed." <u>Dickerson</u>, 380 F.3d at 474 (citing <u>Ferrero</u>, 603 F.2d at 512).

## THE FEDERAL TORTS CLAIM ACT ("FTCA")

Under the FTCA, the United States is liable for those personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b). This court extends liability to the United States under the FTCA just as we would to a private individual in a similar situation; accordingly, we follow state law in determining that liability. <u>Richards v. United States</u>, 369 U.S.1, 82 S. Ct. 585 (1962); <u>Charles v. Louisiana</u>, 15 F.3d 400, 402 (5th Cir. 1994); <u>see</u> <u>also</u>, 28 U.S.C. § 2674.

According to Louisiana law, the plaintiff in a medical malpractice action has the burden of proving: 1) the relevant standard of care in that community under similar circumstances; 2) a breach of that standard of care by defendant; and 3) causation. <u>See</u> LA. REV. STAT. ANN. § 9:2794; <u>Martin v. East Jefferson General Hospital</u>, 582 So.2d 1272, 1276 (La. 1991).

## ANALYSIS

Mrs. Waggoner alleges error on the trial court's determination of three issues: 1) whether plaintiff established that the applicable standard of care required the VA physicians to medicate Mr. Waggoner for hyperlipidemia; 2) whether plaintiff established a breach of a standard of care because the thallium stress test prescribed in April 1996 was not performed until May 1999; and 3) whether plaintiff established a breach of a standard of care because Mr. Waggoner was not given a cardiac catheterization after the results of his May 1997 thallium stress test were known. We address each issue in turn.

## 1. Mr. Waggoner's Hyperlipidemia

On appeal, Mrs. Waggoner's arguments focus on whether or not Mr. Waggoner complied with the prescribed low-cholesterol, low-sodium diet, and on whether medicating him for hperlipidemia would have prevented his heart attack. The trial court's actual ruling, however, is that "[p]laintiff has failed to establish that the applicable standard of care required Alexandria VA physicians to medicate Mr. Waggoner for his hyperlipidemia."

The evidence introduced on this point comes from competing expert witnesses. Plaintiff's experts urged that Mr. Waggoner's physicians <u>should</u> have put him on medication for his triglycerides, but did not claim that medication was the only means. Defendants' witness, by contrast, argued that in the 1990s, dietary changes were a prevalent treatment for elevated

8

triglycerides. The record further indicates that Mr. Waggoner's overall cholesterol frequently tested in only the "moderate risk" range, and that lipid-reducing drugs can carry serious side effects. Based on this evidence, we cannot say that the district court committed clear error in concluding that plaintiffs did not establish that the standard of care in Alexandria, LA, for a patient with Mr. Waggoner's characteristics <u>required</u> the VA to place Mr. Waggoner on medication for his hyperlipidemia.

2. The Delay in Thallium Testing

Mrs. Waggoner's next argument is that the trial court accorded too much weight to Mr. Waggoner's failure to appear for or schedule appointments in determining that the delay in obtaining a thallium stress test was not due to the VA's negligence. In support, she cites to delays and cancellations by the VA, namely: the cancellation of the December 1994 cardiology appointment; a two year delay between the March 29, 1994 cardiology clinic visit and the April 24, 1996 stress test; a failure to administer a thallium stress test during his August 1996 hospitalization; cancellation of a regular stress test scheduled for February 19, 1997; and further delay in scheduling a thallium stress test until May 20, 1997.

The district court also had before it, however, evidence indicating that Mr. Waggoner had missed appointments for thallium tests scheduled for July 25, 1996 (three months after the test had

been ordered) and March 1, 1997. Further, the record notes that a thallium test <u>was</u> ordered during Mr. Waggoner's August 1996 hospitalization, but the request changed to a regular stress test. No explanation is given for the change, but the district court noted that Mr. Waggoner arrived for his August stay without giving notice of his arrival (and, indeed, he had failed to arrive for his scheduled admission on August 21, 1996). "Given this," the district court notes, "it is just as likely that the necessary equipment or personnel were not available at that time." On the balance of the above evidence, it was not clearly erroneous to determine that the VA's negligence was not responsible for the delay in obtaining a stress test. We are not left with a definite and firm conviction that the district court's interpretation of the evidence is mistaken. <u>See</u> <u>Anderson v. City of Bessemer City, N.C.</u>, 470 U.S. 573-5 (1985). It is not for us to disturb that court's factual findings where the district court's conclusion is plausible, as it is here. <u>See</u> <u>Bartmess v. Federal Crop Ins. Corp.</u>, 845 F.2d 1258, 1262 (5th Cir. 1988).

## 3. Failure to Order a Cardiac Catheterization

Mrs. Waggoner's final argument contends that the VA was negligent in failing to give Mr. Waggoner a cardiac catheterzation or other treatment for his coronary artery disease after the results of the May 1997 thallium stress test revealed that his coronary artery disease had worsened, identified his ischemia, and

found a permanent defect in the heart wall. She challenges Dr. Mondal's decision to perform more tests to confirm the diagnosis, and that his characterization of Mr. Waggoner's medical condition did not "lead [Mr. Waggoner] to be overly concerned about his health." She also challenges the doctor's action after the September 3 and November 14, 1997 visits, which, respectively, constituted a referral to the cardiology clinic and a decision to increase his medication, but not to order further testing.

The district court, however, also had evidence that indicated that Mr. Waggoner, who was complaining of chest pain and had been told that his coronary condition had worsened, missed both of the testing appointments scheduled in June 1997 that were meant to provide his doctors with additional information for treatment. When he returned to the VA in September, he was referred to the cardiology clinic, but declined to be admitted for more testing at that time. When Mr. Waggoner returned again in November, Dr. Mondal told Mr. Waggoner that he needed to make the cardiology appointment within two weeks, and to call if the appointment could not be scheduled within that time frame. Although the appointment was ultimately scheduled for December 16, 1997, Mr. Waggoner never contacted Dr. Mondal. Again, we find the record provides ample support for the court's finding that Mr. Waggoner's lack of treatment for with coronary artery disease is not the result of the VA's negligence, and must, therefore, affirm the trial court on this issue.

CONCLUSIONS

Based on the record before us, we cannot say the district court clearly erred in evaluating the facts before it in determining that Mrs. Waggoner had not met her burden of proof regarding a breach of a relevant standard of care on the issues above. The judgement of the district court is therefore AFFIRMED.